## PHENIZEE v. STATE.

(In Banc. Feb. 7, 1938, Suggestion of Error Overruled Feb. 28, 1938.)

[178 So. 579. No. 32983.]

Wm. P. **Stribling**, of Columbus, for appellant.

748

**W. D. Conn, Jr.,** Assistant Attorney-General, for the State.

Argued orally by **Wm. P. Stribling**, for appellant, and by **W. D. Conn, Jr.**, for the State.

**Griffith, J.**, delivered the opinion of the court.

Appellant was convicted of murder and sentenced to be hanged. There is no assignment that the verdict is not sustained by the evidence; but in accordance with our custom in death cases, we have carefully examined the record, as if such an assignment were urged, and we find the evidence amply sufficient. We see no reversible error either in the admission or rejection of evidence, and none in the instructions of the court.

Counsel for appellant has brought to our attention the examination of the jurors on the voir dire, and the statements made in the presence of prospective jurors, by the district attorney, in the course of that examination, and has urged that the import of the interrogatories and statements was such as to commit the jurors to the infliction of the death penalty before a word of the evidence had been heard. This contention we deem of sufficient moment to require full discussion.

It sufficiently appears that all the questions and answers on the voir dire are not in this record, and the Attorney-General takes the position, under Young v. State, 150 Miss. 787, 117 So. 119, that in such a situation the court has nothing before it of such a definite nature as to call for notice by the court on this issue. In some cases the position of the Attorney-General would necessarily be well taken, but here, as will be seen from the quoted parts of the record, which we will insert in this opinion, the summaries made by the trial judge, viewed

in the light of the accompanying statements made by counsel for appellant and by the district attorney, are such that we do not believe we would be justified in ignoring the issue.

In connection with this matter of making voir dire examinations a part of the record, it is, of course, within the authority of the trial judge to have all voir dire examinations taken by the court reporter, but so to do would be a useless labor in nine out of ten cases; and under rule 2 of this court the transcript is not to include the voir dire unless requested in writing by appellant. It being useless to put the court reporter to the tedious labor of taking down all voir dire examinations, a proper practice, we think, would be that when interrogatories are being put by counsel to which the other party objects, the reporter should be at once called and required to take the questions and answers to which objection is made, and likewise as to all subsequent objections in the course of the voir dire. Nothing further, it would seem, ought to be required, but properly this much should be.

The record upon the voir dire is as follows, and as we have already said, appellant urges that the examination and statements of the district attorney were such as to exact a committal from the jurors that they would inflict the death penalty, although they had not yet heard any of the evidence:

"The court made a statement that the question would be put to the jury as to whether they would or would not inflict the death penalty.

"Mr. Stribling: 'We object to that statement being made by the court to the jury.'

"Mr. Stribling: 'I want to move the court to have all these jurors stand aside, every one, as the state has virtually told the jury I won't accept you on this jury unless you are willing to hang the defendant and I want to know now in advance what you are going to do; if you are not willing to do that. then I don't want you on

this jury and I move the Court to exclude the entire jury, all of them.'

"By the Court: 'The examination of the jurors by the District Attorney has been in substance to the effect that the District Attorney is advising the jurors now that the State's position will be to ask the infliction of the death penalty in this case, and he gives them warning now that that is the nature of the case they are about to sit on and asks them if they are willing to assume such responsibility. The motion will be overruled.'

"By Mr. Stribling: 'I want to state in the record it is my understanding the District Attorney has stated to each and every member of this jury that the state proposes and the intention of the state in the trial of this case is to ask for the death penalty and that he wanted to know in advance before selecting this jury or passing upon this jury if they would inflict that kind of punishment if the defendant is found guilty. The District Attorney did not ask this jury the form of the question as laid down by the law, are you opposed to capital punishment, and stop there but dwelt at length as to what he expected to ask and what he expected to receive at the hands of this jury if selected. For that reason I make the motion to exclude the entire jury and impanel a new jury.'

"By the Court: 'The court has heretofore questioned the jury, particularly as to whether or not they have any conscientious scruples against the infliction of capital punishment in a case where the law authorizes and the facts justify it. The Court has heretofore particularly advised the jury that it is solely in their province and solely for them to say whether or not capital punishment shall be inflicted in any case. This statement now being dictated into the record is made in the presence of the jurors and they are again told that regardless of what might have been said before by any person, this question of the infliction of capital punishment rests solely with

them. You are the ones to make that decision in this case as in all cases.'

"By Mr. Lucas: 'The state is going to ask for the death penalty in this case. As the Court explained to you, you are to determine from the facts and the law as to whether it is authorized and justified. The state is going to take the position that it is both authorized and justified and ask at your hands for the death penalty. I want to acquaint you with that in order that it may thoroughly soak in and you may be advised at this time what will be the position of the state. Are you willing to assume the responsibilities of the jury being thoroughly advised that is going to be the position of the State and what they are going to ask? Is there one now that is not willing to assume those responsibilities? The State is going to ask the extreme penalty. The State is going to ask the death penalty. If you are taken as a juror here and being advised at this time that the state is going to ask you to inflict the death penalty in this case, are you willing to go into the jury box in view of the fact that you are going to be asked to give the extreme penalty in this case? If there is a one now knowing that is the position of the state, knowing the state is going to ask the death penaly, is there one from deep down at the bottom of the heart that wants to be asked to be relieved of those duties? You do not want to sit on a case then where the death penalty is asked?'

"(The juror was excused.)

"By Mr. Lucas: 'Is there any other that wants to be excused conscious of the fact the state wants to ask the death penalty, does own up to it?'

"Juror: 'Yes, sir.'

"By Mr. Lucas: 'You are to be the judge of the facts in the matter. If the facts don't warrant it, then I don't want you to go contrary to your wishes, don't want you to vote for it unless you are conscientious in it, but if those facts develop and the law authorizes, would you so vote a verdict?'

"Juror: 'I have seen cases I would.'

"Mr. Lucas: 'You have seen cases that you would? This is a murder case. Now, in a murder case if the facts would warrant it, would you do it?'

"Juror: 'I guess I would.'

"Mr. Lucas: 'You are uncertain?'

"Juror: 'I don't think so.'

"Mr. Lucas: 'You don't think so? I don't want you to strain yourself on it and if you are uncertain about it or if you are not positive as to whether you could or not, be as frank with me as I would with you.'

"The Court: 'The gentleman is indefinite. You are excused.'

"Mr. Lucas: 'Are there any others or is there any other that is uncertain about this. Mr. Stribling made a remark about the District Attorney wanting the death penalty inflicted. I respectfully submit I don't want it done. It is up to the jury whether they want it done.'

"Mr. Stribling: 'Well, just because the District Attorney asks for it, are you going to do it?'

"The jury was completed, the State having exercised nine peremptory challenges and the defendant having exercised eleven peremptory challenges. The jury of twelve men selected and impaneled for the trial of this case and their bailiffs were given the special oath as provided by section 1264 of the Mississippi Code of 1930."

The death penalty in a few of the more serious crimes has always been a part of the laws of this State. Efforts to abolish that penalty in those particular crimes have never succeeded, and, for reasons not necessary to mention, will perhaps not succeed in this State for some years to come, if ever. Nevertheless, there is a large per-centage of our people, subject to jury duty, who are conscientiously opposed to the death penalty in any case. In pursuance of the policy of the State to exact that penalty in the more serious and aggravated crimes where-in the penalty is provided, the trial judges are required to interrogate every juror tendered on a trial panel in

capital cases whether he has any conscientious scruples against the infliction of capital punishment, and to exclude any juror who has any such scruples. Borowitz v. State, 115 Miss. 47, 75 So. 761.

The ponderous interrogatory put by trial judges, "Have you any conscientious scruples against the infliction of capital punishment," is often not understood in its full import by a prospective juror, as every experienced attorney has witnessed. Knowing this, many, if not most, trial judges follow the practice that when the judge observes, from the facial or other expression of a juror, that he has perhaps not fully comprehended the formal interrogatory, an explanation will be made of the meaning of the question, whereupon it will be repeated, or the question, after explanation, will be translated and put in some simple and blunt form, as for instance: Are you opposed to hanging? Are you opposed to hanging as a penalty in any and every case, whatever the facts may be? Do you oppose hanging in any and all cases? And because some jurors are opposed to the death penalty in some classes of capital cases, but not as to others, the question is often put in connection with the particular class of the case about to be tried; for instance, Are you opposed to the death penalty in murder cases? This is a commendable practice and should be followed by all trial judges.

When the judge has satisfied himself of the competency of the panel and has tendered it to the parties, their attorneys, or the parties themselves, are entitled to a further examination, supplementary to that of the trial judge. Section 2068, Code 1930. This right belongs to a district attorney as well as to other attorneys. The district attorney has the right in a capital case to reasonably satisfy himself that no juror who entertains conscientious scruples against the death penalty shall remain on a jury, even though the juror or jury may have passed the examination by the judge; and he may to a reasonable length search further into that inquiry.

But in so doing he must not go to the extent of forcing what is in the nature of a committal as to what the juror or jury would do in that particular case, nor shall the examination be of such character as to introduce or create the impression that a juror will rest under the frown of official displeasure unless he return a death verdict. The examination on the question we are here considering should be in the abstract as to the class of cases, one of which is about to be tried; not what the juror or jury might or might not do in the particular case then and there at the bar. It is time enough for the district attorney, in the particular case, to call for the death penalty in his argument on the merits after the jury has heard all the evidence, and can better judge of the weight of that argument and of the justification of the demand for the death penalty, rather than that it shall be emphasized upon the voir dire.

The majority of the court is of the opinion that the examination by the district attorney, here under review, taken in connection with some of his statements, went too far, transcended the limitations above mentioned, and for that reason we have set out in full what the record shows on that subject. The question, then, is whether the cautionary statements made by the trial judge, taken together with the concluding disavowal by the district attorney and with the written instruction given at the request of the State which plainly told the jury that in the event they returned a verdict of guilty, the jury had the right to fix the penalty either at death or life imprisonment, whether all these cured what otherwise would be harmful error, so far as the return of the extreme penalty is concerned.

We have concluded that, in the light of the matters last mentioned, a jury of fair intelligence, as we must presume this jury was, could not have understood otherwise than that the penalty, whether of death or of life imprisonment, was solely for them to determine, and that no official of the State had a right to dictate to them about

it or to do more than submit to the judgment of the jury on that question. Certainly, as occurs day by day before us, parties who have lost their cases before juries will passionately argue here that we should look upon verdicts as if jurors were men of such feeble comprehension and judgment as to be thrown from their bearings by every breath of irregularity; while, on the other hand, those who have won will eloquently and insistently maintain that jurors when empaneled have become but little less than infallible. Common sense and common observation teaches us that neither of those extremes rest upon any good or dependable foundation, but that in between them there is an ample area within which the processes of justice may, with fair safety, be allowed to rest. Thus in this case, we think we may safely rest on the conclusion that this jury was neither misled nor wrongfully or unduly influenced by what happened on the voir dire, particularly in view of the evidence on the merits which strongly justified the extreme penalty.

Affirmed, and Friday, March 18, 1938, is fixed as the date of execution.