# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 1999-DR-01287-SCT

*FREDERICK BELL*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 01/27/1993 |
| TRIAL JUDGE: | HON. JAMES C. SUMNER |
| COURT FROM WHICH APPEALED: | GRENADA COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF CAPITAL POST-CONVICTION COUNSEL |
| | BY:  ROBERT M. RYAN |
| | TERRI L. MARROQUIN |
| | DAVID VOISIN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: MARVIN L. WHITE, JR. |
| DISTRICT ATTORNEY | DOUG EVANS |
| NATURE OF THE CASE: | CIVIL - DEATH PENALTY - POST CONVICTION |
| DISPOSITION: | APPLICATION FOR LEAVE TO FILE PETITION FOR POST-CONVICTION RELIEF DENIED - 05/20/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**EN BANC.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     Frederick Bell ("Bell") was convicted in the Circuit Court of Grenada County of capital murder

and sentenced to death.  On direct appeal, this Court affirmed the conviction and sentence. ***Bell v. State***,

725 So.2d 836 (Miss. 1998), *cert. denied*, 526 U.S. 1122, 119 S.Ct. 1777, 143 L.Ed.2d 805,

*rehearing denied*, 527 U.S. 1054, 120 S.Ct. 16, 144 L. Ed. 2d 820 (1999).  On December 20, 2001,

Bell filed a petition requesting leave to seek post-conviction relief in the trial court. Citing cumulative error, Bell claims that he received ineffective assistance from counsel, which rendered both the guilt and sentencing phases of the trial unconstitutional. The court denies Bell's petition for post-conviction relief.

**FACTS**

¶2. On May 6, 1991, Robert C. "Bert" Bell was working as the store clerk at Sparks Stop-and-Go in Grenada County. That day Frederick Bell accompanied by Anthony Joe Doss, Robert Kennedy James, and Frank Coffey purchased beer and potato chips from Bert. The two Bells are not related. The four exited the store, sat at a nearby picnic table and talked. Planning to go to Memphis, Bell said that he needed money. Bell announced that he was going to rob the store and showed the group a .22 caliber pistol. Doss also had in his possession a gun, which turned out to be inoperable. Refusing to take part, James and Coffey departed the premises as the other two went back into the store. Minutes later, James and Coffey heard hollering accompanied by gunshots. When Bell and Doss caught up with the other two, they showed them items they had taken from the store, including a money bag, .38 caliber pistol and a box of bullets. Because he did not want any witnesses, Bell then threatened to kill James. Coffey and Doss stepped in to prevent this. Both James and Coffey testified that Bell said he shot Bert. Later that day, Bernard Gladney drove Bell, Doss, and Coffey to Memphis. On the way, Bell again stated that he wanted to kill James to prevent him from telling anyone about the murder.

¶3. Eventually, Bell was arrested in Memphis on another crime. Two guns were found in the house where he was arrested, a third was found in Gladney's vehicle. Leland H. Jones, III, represented Bell during both the trial and the direct appeal. During the trial, there was no direct testimony regarding what actually occurred inside the store. Bell maintained that he was in Memphis the day of the murder.

2

However, there were no witnesses to corroborate his alibi. Both James's sister and Coffey's girlfriend testified that they saw Bell with Coffey, Doss and James the day of the murder.

¶4. The store owner, James Shelby Sparks, testified that a .38 caliber pistol (which was later recovered during Bell's arrest), a box of shells, and a money bag were taken from the store during the robbery. An autopsy revealed that Bert was shot several times. Ballistics tests showed that Bert was shot with the .38 and a smaller caliber gun, likely a .22 caliber.

¶5. Following the trial, on January 26, 1993, the jury found Bell guilty of capital murder and sentenced him to death. *Bell*, 725 So.2d at 841. This Court affirmed both the conviction and sentence. *Bell*, 725 So.2d 836. Bell now seeks relief under the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1 to -29 (Rev. 2000 & Supp. 2003).

## DISCUSSION

¶6. Provided there is no procedural bar, when determining whether to grant leave to seek relief under the Act, the Court reviews application and determines if there is substantial showing of a denial of a state or federal right. Miss. Code Ann. § 99-31-27(5) (Rev. 2000). *See also **Moore v. Ruth***, 556 So.2d 1059, 1061 (Miss. 1990).

### I. TIMELINESS

¶7. The State initially argues that Bell's petition is time barred according § 99-39-5(2), which requires that all petitions for post conviction relief "be made" within three-years after the Court's decision. Miss. Code Ann. § 99-39-5(2) (2000). Following direct appeal, the Court denied Bell's motion for rehearing on December 17, 1998. Relying on this, the State claims that the instant petition, filed on December 20, 2001, is time barred. Generally, the three-year deadline is measured from the date the mandate was issued,

3

which in this case was December 28, 1998. *See* ***Puckett v. State***, 834 So.2d 676, 677 ¶ 6 (Miss. 2002). Thus, the instant petition was filed several days before the deadline.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL AT CULPABILITY PHASE

¶8. To establish a claim for ineffective assistance of counsel the petitioner must prove that under the totality of circumstances (1) the counsel's performance was deficient and (2) the deficient performance deprived the defendant of a fair trial. ***Strickland v. Washington***, 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); ***Benson v. State***, 821 So.2d 823, 825 ¶ 5 (Miss. 2002); ***Burns v. State***, 813 So.2d 668, 673 ¶ 14 (Miss. 2001). "The benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." ***Burns v. State***, 813 So.2d at 673 ¶14 (quoting ***Strickland,*** 466 U.S. at 686, 104 S.Ct. at 2063).

¶9. With regard to the showing of deficient performance, the inquiry focuses on whether counsel's performance fell below an objective standard of reasonableness. ***Williams v. Taylor***, 529 U.S. 362, 391, 120 S.Ct. 1495, 1511, 146 L.Ed.2d 389 (2000); ***Strickland***, 466 U.S. at 688, 104 S.Ct. at 2064. That is, consider whether the assistance was reasonable under all the circumstances seen from counsel's perspective at the time, and the prevailing professional norms for attorneys. ***Strickland***, 466 U.S. at 688, 104 S.Ct. at 2065; ***Burns***, 813 So. 2d at 673 ¶ 14; ***Neal v. State***, 525 So. 2d 1279, 1281 (Miss. 1988). Defense counsel is presumed competent, and because of the distorting effects of hindsight, there is a strong presumption that counsel's conduct is within the wide range of reasonable professional assistance. ***Strickland***, 466 U.S. at 689, 104 S.Ct. at 2065; ***Burns***, 813 So. 2d at 673 ¶ 14.

4

¶10.     Regarding the deprivation of a fair trial, the petitioner must show how counsel's errors prejudiced the defense. *Strickland*, 466 U.S. at 693, 104 S.Ct. at 2067; *Burns*, 813 So. 2d at 673-74 ¶ 14. The petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Strickland*, 466 U.S. at 691-94, 104 S.Ct. at 2066-68; *Burns*, 813 So. 2d at 673-74. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068.

¶11.     If the petitioner is challenging the *conviction*, the question is whether there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt. *Id*. If the petitioner is challenging the *sentence*, the question is whether there is a reasonable probability that, absent the errors, the sentencer – including an appellate court to the extent it independently reweighs the evidence – would have concluded that the balance of aggravating and mitigating circumstances did not warrant death. *Id.*

¶12.     In the instant case, we must consider whether the petition, affidavits, and trial record render it sufficiently likely that Bell received ineffective assistance of counsel so that an evidentiary hearing should be held. *Neal*, 525 So. 2d at 1281. The application must pass both prongs. *Id.* Bell was represented by attorney Leland H. Jones, III, at the trial and on direct appeal. The trial court acknowledged that Jones is "one of the better attorneys, and one who is well known for his common sense understanding and application of the law…" Jones has represented numerous persons charged with criminal offenses at both the trial and appellate court levels, including several capital offense cases.

### A.     CUMULATIVE ERROR.

5

¶13.    Bell contends that counsel's cumulative ineffectiveness rendered the guilt phase of the trial unconstitutional.  We will address this as a separate issue after reviewing each of the following claims.

### B.    COUNSEL'S QUALIFICATIONS.

¶14.    Bell alleges that trial counsel was too inexperienced to try a capital case.  Bell contends counsel's failure to satisfy the qualifications provide by M.R.A.P 22(d) creates a presumption of prejudice.[1]

_____

[1]M.R.A.P. 22 states in part:

(d)    Standards and Qualifications for Attorneys Appointed or Retained to Represent Those Under Sentence of Death in Post-conviction Proceedings.

 Counsel representing those under a sentence of death seeking post-conviction relief shall,

(1)    Be admitted to practice law in Mississippi, being a member in good standing of the Bar for at least five years immediately preceding the appointment, or admitted pro hac vice pursuant to order entered under M.R.A.P. 46 and being a member in good standing of that attorney's home jurisdiction for a like period immediately preceding the appointment,

(2)    Be admitted to practice in the federal courts of Mississippi and before the Fifth Circuit, or, in the case of attorneys appearing pro hac vice, admitted to the federal district courts and the circuit court of appeals having jurisdiction in their home areas,

(3)    Have practiced in the area of state criminal appeals or post-conviction proceedings for three years immediately preceding appointment,

(4)    Have not previously represented the capital petitioner in the case either in the trial court or in the direct appeal, unless the petitioner and counsel expressly request continued representation and waive all potential issues that are foreclosed by continued representation, and

(5)    Have within five years immediately preceding the appointment been counsel in an appeal or post-conviction proceeding in a case in which a death sentence was imposed, and have prior experience as counsel in the appeal of at least three felony convictions and at least one post-conviction proceeding; or, in the alternative, have within such period been counsel in the appeal of at least six felony convictions, at least two of which were appeals from murder
convictions and counsel in at least two post-conviction proceedings.

Provided, however, under exceptional circumstances, and with the consent of the Supreme

6

¶15. M.R.A.P. 22(d) sets forth the qualifications for attorneys representing petitioners in *post-conviction* matters and was adopted well after Bell's trial and direct appeal. *See In Re: Mississippi Rules of Appellate Procedure-Rule 22*, 735 So.2d XXIII (Miss. 1999). Bell asks the Court to impose this heightened standard to trial counsel. This standard has never been imposed outside of its intended setting. This argument is without support and contradicts the presumption under Sixth Amendment jurisprudence.

¶16. Inexperience does not as a matter of law make counsel ineffective. ***Wiley v. State***, 517 So.2d 1373, 1382 (Miss. 1987); *see also* ***United States v. Lewis***, 786 F.2d 1278, 1281 (5th Cir. 1986). The Court disagrees that trial counsel, Leland H. Jones, III, was too inexperienced and notes that prior to Bell's direct appeal, trial counsel had appeared before the Court several times, including two appeals involving murder convictions. *See* ***Holly v. State***, 671 So.2d 32 (Miss. 1996); ***Taylor v. State***, 597 So.2d 192 (Miss. 1992).

¶17. Bell emphasizes that trial counsel was working three death penalty cases simultaneously and claims that even the most experienced death penalty counsel would have been unable to properly defend him. *See* ***Smith v. State***, 724 So.2d 280 (Miss. 1998); ***Holly***, 671 So.2d 32. Bell cites as proof trial counsel's request for continuance and an affidavit provided by post-conviction counsel Thomas C. Levidiotis, who

Court, an attorney may be appointed who does not meet the stated qualifications upon a showing that the attorney's experience, stature and record enable the Court to conclude that the attorney's ability significantly exceeds the standards set forth in the rule.

7

attests that counsel could not simultaneously maintain such a workload and provide effective assistance.

¶18.    The petition fails to show specific instances where counsel's performance suffered as a result of his workload. Absent specific instances of error, defendant's allegations that trial counsel was inexperienced, carried unduly heavy caseload and had severely limited resources, are insufficient to support a claim for ineffective assistance of counsel. *Cabello v. State*, 524 So.2d 313, 316 (Miss. 1988).  This issue is without merit.

### C.    SECURE ADEQUATE FUNDS FOR INVESTIGATION

¶19.    On November 30, 1992, trial counsel joined co-defendant Anthony Doss's request for the appointment of additional counsel or in the alternative for an investigator.  The request for an investigator was granted.  Though Bell alleges that counsel failed to secure adequate funds, his claim, more precisely, is that counsel failed to timely request funds and that this delay led to a highly ineffective and disjointed defense.  Because such funds were provided, the Court finds that this issue is without merit.

¶20.    Additionally, Bell contends that the State should have provided funds for an independent investigation.[2]  However, he does not discuss specifically how counsel's delay hindered the defense or how an earlier request for assistance would have helped.  The claim that an earlier request would have allowed a stronger defense is highly speculative and without support.

### D.    SECURE FUNDS FOR EXPERTS NEEDED.

---

[2]There are instances, when in fairness, the State should provide funds for non-legal personnel needed by the defense. *Hansen v. State*, 592 So.2d 114, 125 (Miss. 1991) (citations omitted).  To receive assistance, defendants must show a substantial need for requiring such assistance. *Id.* (citing *Caldwell v. Mississippi*, 470 U.S. 320, 105 S.Ct. 2633, 86 L.Ed. 2d 231 (1985)).

¶21.    Bell submits trial counsel failed to request the appointment of a ballistics expert. He maintains that evidence as to who fired which weapon would have been relevant mitigating evidence. He claims that the fatal wounds came from the .38 and, because Doss's fingerprints were found behind the counter, Doss had access to the victim's gun and thus fired the fatal shot. He contends this would have proved that Doss was the principal and that he was merely an accomplice.

¶22.    At trial, the evidence presented showed that the victim was shot by .38 and .22 caliber guns. The State's position was that the .22 caliber wounds were inflicted by Bell. Because wounds from either weapon could have been fatal, the actual fatal wound was not established. Therefore, this argument is without merit. Ballistics is relevant in determining whether a particular gun fired a given bullet, not for determining which bullet proved fatal. Such a determination would require a pathologist. Likewise, because identity of the weapon was never an issue, it is likely such a request would have been denied. A ballistics expert would not aid in the determination of which bullet proved fatal or who served as the principal in the crime.

### E.    INVESTIGATE CRITICAL ASPECTS OF DEFENSE.

¶23.    Bell claims that counsel failed to investigate the possibility that someone else committed the crime, prove his available alibi, and/or to find witnesses who could have provided important evidence on behalf of the defense. Under Mississippi law, counsel has the duty to interview potential witnesses and to make independent investigation of facts and circumstances. *Payton v. State*, 708 So.2d 559, 561 ¶ 8 (Miss. 1998) (citing *Ferguson v. State*, 507 So.2d 94, 96 (Miss. 1987) (quoting *Nealy v. Cabana*, 764 F.2d 1173, 1177 (5th Cir. 1985))). In addition, counsel must make reasonable investigations or make a reasonable decision that makes particular investigations unnecessary. *Wiley,* 517 So.2d at 1379.

¶24. Bell argues a reasonable investigation would have led counsel to call Bud McMillian as a witness. He claims that McMillian would have testified that he had seen someone resembling Doss running from the store, and that such testimony would have supported his alibi. Bell's argument is nonsensical. On one hand, Bell faults counsel for not calling McMillian to support his alibi. On the other, Bell claims, that by testifying that he saw someone resembling Doss, McMillian would have supported the theory that Bell was merely present during the commission of the crime. Bell cannot argue that the testimony supported either his alibi or his claim that he served only as an accomplice.

¶25. Without a supporting affidavit from McMillian, Bell asks the Court to speculate as to McMillian's testimony and its effect on the trial. Counsel's choice of whether to call witnesses and ask certain questions falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim. *Jackson v. State*, 815 So.2d 1196, 1200 ¶ 8 (Miss. 2002) (citing *Cole v. State*, 666 So.2d 767, 777 (Miss. 1995)).

¶26. Next, Bell claims that trial counsel failed to investigate his alibi and that had counsel done so, he would have discovered Bernard Gladney as a potential, corroborating witness. Bell contends that Gladney would have testified that Bell was in Memphis at 7:30 p.m. the day of the murder. Because Gladney is serving time in the Tennessee Department of Corrections for Second Degree Murder, the decision not to call Gladney could be deemed as sound trial strategy.

¶27. While together in Memphis, Bell and Gladney were involved in a separate murder. It was the crime for which Bell was initially arrested. Gladney subsequently pled guilty and was sentenced to life in the Tennessee Department of Corrections. As a convicted murderer, Gladney had little credibility, and any testimony provided by him likely would have harmed the defense. Therefore, this claim is without merit.

## F.    JURY QUESTIONNAIRES.

¶28.    Bell claims that counsel failed to request questionnaires to accompany the jury summons.  By providing more information, he argues that such questionnaires would have allowed for a more effective voir dire. No support is provided that such a failure renders counsel ineffective.  Failure to cite relevant authority obviates the appellate court's obligation to review such issues. *Simmons v. State*, 805 So.2d 452, 487 ¶ 90 (Miss. 2002); *Williams v. State*, 708 So.2d 1358, 1362-63 (Miss. 1998).  Additionally, extensive latitude was permitted during the course of voir dire.  Therefore, this issue is without merit.

## G.    DISCRIMINATION IN JURY POOL.

¶29.    Bell claims that counsel failed to raise *Batson* challenges to the prosecution's exercise of peremptory challenges. *See Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).  Under *Batson*, if a party believes that the other used peremptory challenges to racially discriminate against potential jurors: (1) the party objecting to a peremptory challenge must make prima facie showing that race was the criteria for the exercise of the challenge; (2) if this initial showing is successful, the party desiring to exercise the challenge must offer a race-neutral explanation for striking the potential juror; and (3) trial court must then determine whether the objecting party has met their burden to prove there has been purposeful discrimination in exercise of peremptory challenges.  *Caston v. State*, 823 So.2d 473, 498 ¶ 88 (Miss. 2002) (quoting *Stewart v. State*, 662 So.2d 552, 557-58 (Miss. 1995)).

¶30.    In *Connor v. State*, 684 So.2d 608, 612 (Miss. 1996), this Court stated that "for counsel's performance to be deemed ineffective, [the defendant] must demonstrate that his case was prejudiced by the failure to raise any challenges pursuant to *Batson*." Generally, the Fifth Circuit considers an "attorney's

actions during voir dire to be a matter of trial strategy, which 'cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that it permeates the entire trial with obvious unfairness.'" *Burns*, 813 So.2d at 675-76 (citing *Teague v. Scott*, 60 F.3d 1167, 1172 (5th Cir. 1995)).

¶31.    Trial counsel went on the record to indicate that the failure to raise a *Batson* issue was a tactical decision based upon his understanding of the, at the time, recently decided case of *Griffin v. State*, 610 So.2d 354, 356 (Miss. 1992), and upon instructions from his client.   There was a discussion, both on and off the record, related to this Court's ruling in *Griffin*.   In *Griffin*, the defendant argued that the State could not make *Batson* challenges to defensive peremptory strikes.   However, we ruled that the State could challenge the defense's strikes, stating:

> The United States Supreme Court recently held in *Georgia v. McCollum*, 505 U.S. 42, 112 S.Ct. 2348, 120 L.Ed.2d 33 (1992), that *Batson* applies to both prosecutors and defendants. The Court stated:
>
>> Regardless of who invokes the discriminatory challenge, there can be no doubt that the harm is the same--in all cases, the juror is subjected to open and public racial discrimination.... We therefore reaffirm today that the exercise of a peremptory challenge must not be based on either the race of the juror or the racial stereotypes held by the party.
>
> *McCollum* takes the wind out of Griffin's sails, essentially holding that what's sauce for the goose is sauce for the gander. The assignment of error is wholly without merit.

*Griffin v. State*,  610 So.2d at 356.   Bell's counsel indicated this meant that the State could only challenge Bell's strikes if he first challenged the State's strikes.   When questioned by the trial court, Bell concurred that he did not wish to have his selection of the jury challenged.   Even though trial counsel, and

perhaps the trial court, misunderstood *Griffin,* this argument is without merit. The case sub judice is practically identical to the situation presented to us in *Watts v. State*, 733 So.2d 214 (Miss. 1999).

¶32. In *Watts*, as in this case, "[i]t is clear from the record, however, that it was the defense's idea to 'waive *Batson*' to avoid having to come up with gender- or race-neutral reasons for peremptory challenges." *Id.*, 733 So.2d at 230 ¶ 47. A new trial was not warranted on the basis of the *Batson* issue since the defendant waived the issue. In so holding, we looked to *Mata v. Johnson*, 99 F.3d 1261 (5th Cir. 1996), *vacated in part on other grounds*, 105 F.3d 209 (5th Cir. 1997). In *Mata*, the Fifth Circuit refused to grant a new trial to a Hispanic defendant who expressly agreed with the prosecution to exclude all eight black members of the venire panel. Both cases turned on the defendants' willingness to participate in the constitutional violation and, thus, denied new trials. The same reasoning is applied here.

¶33. The failure to raise a *Batson* challenge was based upon a tactical decision and was not ineffective assistance of counsel. Even if the failure to raise a *Batson* challenge were in error, a defendant is entitled to competent counsel, not errorless counsel. *Woodward v. State*, 843 So.2d 1, 7 ¶ 14 (Miss. 2003).

¶34. Furthermore, Bell has failed to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *See Burns v. State*, 813 So.2d at 673-74 (citing *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991)). *See also Strickland v. Washington*, 466 U.S. at 691-94. For these reasons, this issue is without merit.

### H. Voir Dire

¶35. An attorney's actions during voir dire are considered to be a matter of trial strategy and as such, cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be

13

"so ill chosen that it permeates the entire trial with obvious unfairness". ***Burns***, 813 So.2d at 675-76 ¶ 22 (citing ***Teague***, 60 F.3d at 1172). *See also* ***Garland v. Maggio***, 717 F.2d 199, 206 (5th Cir. 1983). Under this claim, Bell asserts five sub-issues:

### 1. Individual, Sequestered Voir Dire

¶36.    Prior to voir dire, trial counsel requested an individual, sequestered voir dire of the panel. ***Bell***, 726 So.2d at 845. However, counsel failed to present an argument supporting this motion, which was then denied. ***Id.*** Bell contends that had counsel provided a supporting argument, the request would have been granted and that this failure prevented the defense from uncovering juror biases. The State counters that no authority supports Bell's position. Though the motion stood a better chance of being granted if supported, we cannot be certain as to why the request was denied.

¶37.    Under Uniform Circuit and County Court Rule 3.05 it is within the discretion of the circuit court to allow individually sequestered voir dire. ***Stevens v. State***, 806 So.2d 1031, 1054-55 ¶ 109 (Miss. 2001); *see also* ***Jones v. State***, 461 So.2d 686, 692 (Miss. 1984). Considering a similar issue in ***Gilliard v. State***, 462 So.2d 710, 714 (Miss. 1985), the Court ruled that the defendant was not denied effective assistance of counsel and held that counsel's failure to request individual sequestered voir dire did not constitute ineffective assistance of counsel absent proof that something would have been discovered resulting in a different jury panel.

¶38.    In the instant case, although counsel requested individual voir dire and thus is distinguishable from ***Gilliard***, Bell is unable to prove but for counsel's failure to argue, the request would have been granted or that a different jury panel would have resulted.

14

## 2.      Court's Examination.

¶39.     This Court has already addressed on Bell's direct appeal his contention that "the voir dire of the jury at his trial was so flawed as to be meaningless and that as a result the jury was excessively weighed in favor of the prosecution" and that the flaws were due to "leading questions suggesting to the jurors the proper answers, his failure to conduct meaningful individual examination of the panel members, and his reliance upon the members' self-assessment of their ability to give Bell a fair trial." *Bell,* 725 So.2d at 844 ¶ 9. Although no objections were made at the time or in post-trial motions, we examined the issue and held:

> We have also examined the record of the voir dire by the trial court as to any possible plain error, and although we cannot say that the manner of examining the jury was desirable, its defects do not rise to the level of fundamental constitutional error.

*Id.* at 844 ¶ 11.

¶40.     Because this issue was already addressed on direct appeal, an evidentiary hearing is unnecessary on this issue. Further, this issue is without merit. Not only has Bell failed to show that the performance of trial counsel was deficient, there has been no showing that the jury empaneled was not fair and impartial.

## 3.      Information Sufficient to Exercise Meaningful Challenges.

¶41.     Bell cites several questions that counsel failed to ask the prospective juror and claims that such questions were necessary to cure trial court's defective voir dire. Examples of necessary questions include: 1) whether they would automatically impose the death penalty or would they fairly consider mitigating evidence; 2) do they have racial biases; 3) whether they were exposed to pre-trial publicity; 4) whether they or their family members worked in a convenience store; 5) whether they or a family member had ever

been a victim of a crime; 6) whether they had a friend or relative who had a drug or alcohol problem; and 7) whether they had religious beliefs concerning alcohol.

¶42.    Bell cites no authority that the failure to ask such questions supports the claim of ineffective assistance of counsel. In *Connor v. State*, 684 So.2d at 613, the Court found that counsel was not ineffective for failing to conduct a more extensive voir dire, especially where any questions would have been redundant and the accused failed to indicate how the defense was prejudiced by counsel's failure. *See also Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) (Defense counsel's failure to conduct more extensive questioning of potential jurors regarding their racial attitudes and their views of death penalty on voir dire represented reasonable, strategic decision and, thus, did not constitute ineffective assistance of counsel); *Price v. State*, 749 So.2d 1188, 1199 ¶ 42 (Miss. Ct. App. 1999) ("Deciding what questions to ask during voir dire is left largely up to the attorney" and is a matter of trial strategy.).

¶43.    We examined the record of the voir dire in the direct appeal and found that, although the trial court may not have conducted the best voir dire, "any flaws in the judge's examination of the panel are mitigated by the leeway allowed defense counsel in his phase of voir dire." *Bell*, 725 So.2d at 844 ¶ 10. By raising this issue now, Bell is attempting a second bite at the apple. As stated above, not only has Bell failed to show that the performance of trial counsel was deficient, there has been no showing that the jury impaneled was not fair and impartial.

### 4.    Rehabilitation of potential jurors.

¶44.    Bell claims that counsel failed to rehabilitate jurors Glenda Gale Boozer Steed, Charles Lott, Stephen Bernard Chism, Ella Mae Russell, Kennedy Willis, and John William Parker, who, for religious

16

reasons, could not impose the death penalty. He argues that counsel should always attempt to rehabilitate jurors. The State claims that Bell misleads the Court in that counsel did attempt to rehabilitate. We find that this issue is without merit.

¶45. Bell cites several cases, including: ***Phenizee v. State***, 180 Miss. 746, 178 So. 579 (1938) and ***Burns v. Estelle***, 592 F.2d 1297 (5th Cir. 1979), *aff'd en banc*, 626 F.2d 396 (5th Cir. 1980), neither of which support his position. First in ***Phenizee***, this Court held that counsel is entitled to further question the jury after the trial court is satisfied that the panel is competent. ***Phinezee***, 178 So. at 582. Because the right to question venire men is not at issue, the Court finds that the holding from ***Phenizee*** has no impact on the instant matter.

¶46. Bell incorrectly claims that in ***Burns***, the Fifth Circuit vacated a death sentence because the defense was not allowed to voir dire a potential juror who expressed doubts about the death penalty. Instead the Fifth Circuit held that the death sentence could not be carried out because a venire member, who did not irrevocably commit to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings, was prematurely dismissed. ***Burns v. Estelle***, 626 F.2d at 398. Bell fails to cite any case holding that counsel was held to be ineffective because he or she failed to rehabilitate a venire member.

¶47. Unless there is proof that rehabilitation was possible, a defendant is not prejudiced by counsel's failure to rehabilitate venire member who were excused because of their views contrary to death penalty. ***Sawyer v. Butler***, 848 F.2d 582, 589 (5th Cir. 1988). *See also* ***Williams v. Collins***, 16 F.3d 626, 633 (5th Cir. 1994) (defense counsel was not ineffective in failing to object when venire members were

excused for cause based on their inability impose death penalty under any circumstances; any objections and attempts to rehabilitate venire members would have been futile).

¶48.    In the instant case, all the jurors in question expressed that they were unwilling to impose the death penalty, regardless of the circumstances.  It was apparent that they were unable perform their duties in accordance with their instructions and oath.  *See generally **Williams***, 16 F.3d at 633.  Bell has made no showing that rehabilitation was possible. Therefore, this issue is without merit.

### 5.    Removal for Cause

¶49.    Bell argues that his trial counsel failed to object to the impanelment or have removed eight of the twelve jurors because each had ties to law enforcement or the victim's family.  He claims that counsel failed to protect his right to a fair trial by an impartial jury as provided under U.S. Constitution, amend. VI, and Article 3, Section 26 of the Mississippi Constitution.  *See generally **Mhoon v. State***, 464 So.2d 77, 79 (Miss. 1985). On direct appeal, we affirmed the trial court where it denied Bell's challenge for cause as to other jurors who had relationships with the victim or his family or the law enforcement community. ***Bell***, 725 So.2d at 845-46.  We held that "mere acquaintance or even family relationships with parties or those related to parties is not sufficient to require that a juror be excused for cause." ***Id.*** at 846 ¶ 16.

> With respect to the overall performance of the attorney, "counsel's choice of whether or not to file certain motions, call witnesses, ask certain questions, or make certain objections fall within the ambit of trial strategy" and cannot give rise to an ineffective assistance of counsel claim.

***Jackson v. State***,  815 So.2d 1196, 1200 ¶ 8 (Miss. 2002) (citing ***Cole v. State***, 666 So.2d 767, 777 (Miss. 1995)).

¶50.    As this Court has pointed out:

18

This Court has discussed the wide latitude allowed attorneys regarding their trial strategy:

> This Court gives much deference to an attorney's trial tactics. As this Court has stated: Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. *Cf*. *Engle v. Isaac*, 456 U.S. 107, 133-134 [102 S.Ct. 1558, 1574-75, 71 L.Ed.2d 783] (1982). A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. *Lambert v. State*, 462 So.2d 308, 316 (Miss. 1984), citing *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065, 80 L.Ed.2d at 694. The right to effective counsel does not entitle the defendant to have an attorney who makes no mistakes at trial. The defendant just has a right to have competent counsel.

*Smiley v. State*, 815 So.2d 1140, 1148 ¶ 32 (Miss. 2002) (citing *Mohr v. State*, 584 So.2d 426, 430 (Miss. 1991)).

¶51.    Moreover, the perceived relationships between the jurors and the victim or the law enforcement community are tenuous at best. The case was tried in a rural Mississippi county with a limited jury pool. The decision not to seek removal of these named jurors may arguably be part of trial strategy. Because we cannot use hindsight to analyze trial counsel's unsuccessful strategy, this issue is without merit.

### 6.    Additional Peremptory Challenges

¶52.    Bell claims that counsel's failure to request additional peremptory challenges rendered counsel's assistance ineffective. The Court finds that this issue is without merit. Also, through this claim, Bell attempts to emphasize how the trial court erred in denying his challenges for cause, an issue considered in the direct appeal and as such, is barred under Miss. Code. Ann. § 99-39-21(3).

19

## I. Meaningful and Consistent Theme of Defense.

¶53. Bell argues that the trial counsel presented conflicting defenses. Trial counsel argued that Bell was in Memphis and not in the store at the time of the murder. Bell maintains that counsel failed to have a consistent notion of what the defense theory should be, and that this failure supports the cumulative error. Specifically, he cites defense's closing argument. The Court finds this claim without merit.

¶54. Bell cites the following cases: *McFadden v. United States*, 614 A.2d 11 (D.C. 1992) (court failed to conduct a pretrial inquiry regarding counsel's effectiveness, after counsel admitted his lack of preparation); *People v. Hattery*, 488 N.E.2d 513 (Ill. 1985) (by conceding defendant's guilt, counsel failed to subject prosecution's case to meaningful adversarial testing). We find that counsel's conduct in the instant case does not rise to level of the failures discussed in the cases cited.

¶55. Any alleged conflicting defenses resulted from the substantial evidence of Bell's guilt. As for the closing argument, trial counsel emphasized the burden of proof, attempted to raise reasonable doubt and attacked the credibility of witnesses. Accordingly, the closing argument was both consistent and effective. *See Yarborough v. Gentry*, 540 U.S. __, 124 S.Ct. 1, 157 L. Ed. 2d 1 (2003).

## J. Impeachment of Witness

¶56. Bell claims counsel failed to impeach Robert McKinney James who, because he was in the store just prior to the murder, had a motive to lie. James received no consideration in return for his testimony. Instead of discussing how this failure prejudiced the defense, Bell presents an unsupported motive for James to lie. Of course, a realistic motive might be based on Bell's immediate threat to kill James. *Bell*, 725

So.2d at 841. However, wisely Bell chose not to cite this as a motive. The Court finds this issue without merit.

### K. Stipulation of State's Expert Evidence

¶57. Bell claims that counsel should have challenged the reliability and completeness of the findings by the State's expert, Stephen Timothy Hayne, M.D. Dr. Hayne's testimony was based on autopsy dated April 6, 1991. Because the murder occurred on May 6, 1991, Bell argues that such an autopsy was physically impossible. Further, he alleges that had counsel objected Dr. Hayne's testimony would have been suppressed, resulting in a directed verdict in favor of the defense. In this instance, the error is superficial and is without merit.

### L. Objection to Evidence

¶58. Trial counsel stipulated to the introduction of three weapons: a .22 caliber pistol, a .38 caliber pistol, and a .25 caliber pistol. Because no witness testified regarding the .25 caliber weapon, Bell alleges that .25 was irrelevant and ultimately prejudiced him. Bell fails both to discuss how he was prejudiced or to cite any case law in support of his position. Not only is this issue without merit, but also counsel's choice whether to make certain objections fall within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim. *Jackson*, 815 So.2d at 1200 ¶ 8.

### M. Attendance of witnesses

¶59. Bell claims that counsel was ineffective because he failed to secure the attendance of witnesses to corroborate his alibi. Save Bernard Gladney, Bell fails to name the witness counsel failed to call. In a motion under Miss. Code Ann. § 99-39-9, Bell is required to: "name the state of Mississippi as respondent

21

and shall contain...affidavits of the witnesses who will testify and copies of documents or records that will be offered shall be attached to the motion." *See also* **Lewis v. State**, 776 So.2d 679, 682 ¶ 16 (Miss. 2000) (the statute requires affidavits of those witnesses that will testify). This issue is without merit.

### N. Jury Instructions

¶60. Bell claims that trial counsel failed to object to jury instructions that incorrectly stated the law. On direct appeal, the Court held that "[a]n aiding and abetting instruction, in the form complained of here, was most recently approved in **Carr v. State**, 655 So.2d 824, 833 (Miss. 1995), *cert. denied*, 516 U.S. 1076, 116 S.Ct. 782, 133 L.Ed.2d 733 (1996)." **Bell**, 725 So.2d at 847-48. Because this argument is an attempt to relitigate an issue previously decided to be without merit on direct appeal, this issue is procedurally barred in accordance to Miss. Code Ann. § 99-39-21(2) & (3) (2000).

### III. INEFFECTIVE ASSISTANCE OF COUNSEL DURING THE PENALTY PHASE

¶61. The role of an attorney at a capital sentencing proceeding resembles his role at trial.

> A capital sentencing proceeding "is sufficiently like a trial in its adversarial format and in the existence of standards for decision" that counsel's role in the two proceedings is comparable--it is "to ensure that the adversarial testing process works to produce a just result under the standards governing decision."

**Burger v. Kemp**, 483 U.S. 776, 788-89, 107 S.Ct. 3114, 3123, 97 L. Ed. 2d 638 (1987) (citing **Strickland**, 466 U.S., at 686, 687, 104 S.Ct., at 2064).

¶62. At the outset, the Court notes that on direct appeal we stated that "[w]hen given the opportunity, Bell offered no real mitigating circumstances, he simply continued to deny being present or committing the

act." ***Bell***, 725 So.2d at 867. With this in mind, the Court reviews counsel's performance during the sentencing phase.

### A. Additional Time Between Culpability and Sentencing Phases.

¶63. Bell claims that a limited continuance was necessary between the guilt and sentencing phases of the trial, and that without such, counsel was unable to present an effective case during sentencing. Because the two phases are inherently different, Bell reasons that a continuance was necessary. Bell does not discuss how the lack of a continuance affected the defense. He emphasizes that in the decision from the direct appeal, the Court noted that the defense presented no real mitigating circumstances. ***Bell***, 725 So.2d at 867. Countering, the State argues that this was not a complex case and therefore no continuance was needed.

¶64. Bell cites Robin E. Abram's article: *A Capital Defendant's Right to a Continuance Between the Two Phases of a Death Penalty Trial*, 64 N.Y.U. L. Rev. 579 (1989), *cited in* ***Pruett v. State***, 574 So.2d 1342, 1348 (Miss. 1990) (Anderson, J., dissenting). The article contends that the complexity of the legal rules governing both the guilt and penalty phases of capital trials complicates counsel's preparation and intensifies the need for time. *See* Adams *supra*, at 581-82. Likewise, a continuance is necessary because the defendant, the jury, and defense counsel need time to recover emotionally from the capital conviction and to focus on the issue of sentencing. *Id.* Bell relies on precedent from other jurisdictions, such as South Carolina and Maryland, in which continuances are legislatively provided or available upon the request. *See* Md. Ann. Code Art. 27 § 413(a) (Supp. 1988); S.C. Code § 16-3-20(B) (2002).

¶65. The guilty verdict was delivered at 3:30 p.m., then, following a brief recess, the sentencing phase begun and was completed by 7:30 p.m. Theoretically, counsel could have requested a continuance until the following morning. However, our Legislature has determined that:

> Upon conviction or adjudication of guilt of a defendant of capital murder or other capital offense, the court shall conduct a separate sentencing proceeding to determine whether the defendant should be sentenced to death, life imprisonment without eligibility for parole, or life imprisonment. The proceeding shall be conducted by the trial judge before the trial jury as soon as practicable.

Miss. Code Ann. § 99-19-101. Furthermore, we have held:

> [I]t should be noted that this Court has repeatedly and consistently held that post-conviction relief in Mississippi is not granted upon facts and issues which could or should have been litigated at trial and on appeal.

*Smith v. State*, 434 So.2d 212, 215 (Miss. 1983) (citing *Callahan v. State*, 426 So.2d 801 (Miss. 1983); *Bell v. Watkins*, 381 So.2d 118 (Miss. 1980); *Auman v. State*, 285 So.2d 146 (Miss. 1973); *Irving v. State*, 194 So.2d 239 (Miss. 1967); *Gordon v. State*, 160 So.2d 73 (Miss. 1964); *Kennard v. State*, 246 Miss. 209, 148 So.2d 660 (1963); *Rogers v. State*, 240 Miss. 610, 128 So.2d 547 (1961); *Goldsby v. State*, 226 Miss. 1, 78 So.2d 762 (1955); *Wetzel v. State*, 225 Miss. 450, 76 So.2d 188 (1955)) (footnote omitted). This issue is without merit.

## B. Opening Statement.

¶66. Neither the defense nor the prosecution presented an opening statement during the penalty phase. Citing Louisiana precedent, Bell claims that this failure supports his claim of ineffective assistance of counsel. *See State v. Sanders*, 648 So.2d 1272, 1293 (La. 1994) (The court "has come close to stating that an attorney's failure to make an opening statement constitutes ineffectiveness per se."). The giving of

24

an opening statement in the penalty phase is not required in Mississippi and the failure to do so may be deemed trial strategy, particularly where the prosecution did not make an opening statement. *Cabello*, 524 So.2d at 318. *See also Gilliard v. Scroggy*, 847 F.2d 1141, 1147 (5th Cir. 1988). *Cf. Manning v. State*, 735 So.2d 323, 347 ¶ 56 (Miss. 1999). Therefore, this issue is without merit.

## C.      Jurors' Speculation of Potential Release

¶67.    Bell claims that counsel failed to eliminate any jury misperceptions that he would be eligible for parole. For this point, Bell cites *Williams v. State* for the policy that "[r]eference to the possibility of parole should the defendant not be sentenced to die [sic] are wholly out of place at the sentencing phase of a capital murder trial..." *Williams v. State*, 445 So.2d 798, 813 (Miss. 1984). In *Williams*, the Court ordered that the defendant be resentenced based on improper comments by the prosecutor which denied the defendant a fair sentencing hearing. *Id.* at 814.

¶68.    In the instant case, there is no evidence of jury misperceptions. Bell fails to cite, and there is nothing from the record to suggest, that the prosecutor made any improper comments analogous to *Williams*. This claim is without merit.

## D.      Aggravating Circumstances.

¶69.    Bell claims that counsel failed to the object to the inclusion of the aggravating factor "that the murder was committed for the purpose of avoiding or preventing a lawful arrest." *See also* Miss. Code Ann. § 99-19-101(5) (2000).[3] On direct appeal, the Court considered the appropriateness of this factor and held that "Bell's own statements and actions are sufficient to warrant an inference by the jury that Bert

---

[3]Section 99-19-101 provides the aggravating and mitigating circumstances for a jury to consider during sentencing proceedings related to a capital crime.

was shot because he wanted to leave no witnesses." **Bell**, 725 So.2d at 858. The Court noted that an instruction incorporating this factor is warranted if "there is evidence from which it may be reasonably inferred that a substantial reason for the killing was to conceal the identity of the killer..." **Id.** (citations omitted).

¶70. Furthermore, Robert Kennedy James testified that, wanting to eliminate all witnesses, Bell had threatened to kill him, too. Based on such, this claim is without merit.

### E. Investigation.

¶71. Bell claims that counsel failed to adequately investigate possible mitigating evidence. He contends that counsel's investigation was deficient for several reasons, such as: 1) that only eight people were interviewed; 2) except for a brief meeting with trial counsel's investigator, Bell's mother and sister had no contact with counsel until the sentencing phase; and 3) his mother and sister were never subpoenaed.

¶72. There is a difference between when counsel fails to investigate and when counsel fails to *adequately* investigate. Discussing this, the Fifth Circuit stated:

> "[C]ounsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." **Strickland**, 466 U.S. at 691, 104 S.Ct. 2052. Furthermore, this court has stated that we "must be particularly wary of 'arguments that essentially come down to a matter of degrees. Did counsel investigate enough? Did counsel present enough mitigating evidence? Those questions are even less susceptible to judicial second-guessing.'" **Dowthitt v. Johnson**, 230 F.3d 733, 743 (5th Cir.2000), *cert. denied*, 532 U.S. 915, 121 S.Ct. 1250, 149 L.Ed.2d 156 (2001) (quoting **Kitchens v. Johnson**, 190 F.3d 698, 703 (5th Cir.1999)).

**Smith v. Cockrell**, 311 F.3d 661, 669 (5th Cir. 2002).

26

¶73. The record reveals that counsel interviewed Bell's mother, grandmother, brother, girlfriend, three elementary school teachers, and the wife of a local attorney. Bell takes issue with the degree of investigation. Affidavits citing counsel's failures are provided by both his mother and sister. However, the affidavits do not provide any additional information that could have or should have been provided at trial or other persons who could have provided additional information. Bell's mother did testify on behalf of Bell at the sentencing phase. Therefore, this issue is without merit.

### F. Mitigating Evidence.

¶74. Bell claims that counsel failed to present mitigating evidence regarding his age, mental retardation, emotional disturbances and mental illness, disadvantaged and abusive childhood, adaption to prison conditions, and cultural impacts on his life. These issues are without merit.

¶75. This Court has dealt with the issues of adequate investigation and presentation of evidence in the context of ineffective assistance of counsel in death penalty cases. *See **Holly v. State***, 716 So.2d 979, 990 (Miss. 1998); ***Foster v. State***, 687 So.2d 1124 (Miss. 1996); ***Conner v. State***, 684 So.2d 608 (Miss. 1996); ***Woodward v. State***, 635 So.2d 805 (Miss. 1993); ***State v. Tokman***, 564 So.2d 1339 (Miss. 1990).

¶76. In ***Holly***, the Court held that counsel's presentation of mitigation evidence through only one witness, the defendant's mother, was deficient considering that there was evidence that the defendant had mental health problems and, thus, violated ***Strickland***'s first prong *Id.* at 990. However, finding that Holly failed to show that but for counsel's performance the sentence would have been different, the Court denied the application to seek post-conviction relief. *Id.* at 991.

27

¶77.    In the instant case, three witnesses testified for the defense: Myra Bell (mother), Tammy Teresa Armstrong (Bell's girlfriend and the mother of his child), and Bell himself.  Myra's testimony focused on the violent and abusive family life which the family endured at the hands of her former husband. Ms. Armstrong testified regarding Bell's disposition and his loving relationship with their young son and her daughter.   Following the testimony and arguments, the jury was instructed to consider the following mitigating factors: 1) that Bell was 19 years-old at the time of the crime; 2) his lack of education; 3) raised in poverty; 4) his violent family life; 5) his abusive father; 6) he was the father of and provider for a 3 year-old child; and 7) he could have been merely an accomplice.  Because the jury was instructed during sentencing to consider his age, the Court finds that trial counsel presented sufficient evidence regarding Bell's age at the time of the crime.

¶78.    Attached to the application is an assessment by the State Department of Education from 1987, which indicated that Bell "functioned in the low average range of intelligence" and had an I.Q. of 81. Aside from the affidavits provided by his mother and sister, Bell's application provides no evidence that he suffers from either emotional or mental problems.   The testimony of Myra Bell primarily focused on the disadvantaged and abusive childhood that Bell suffered.  She discussed how they lived off of minimum wage and in a one-room apartment with a violent husband.  She recalled the problems she had with her husband after the divorce, how on one occasion he "shot-up" the house, and that he had been in and out of jail. Based on her testimony during the penalty phase, evidence was presented regarding Bell's difficult childhood.

¶79.    Finally, Bell claims that counsel should have presented evidence of his good behavior while incarcerated.  Bell fails to cite what additional evidence should have been presented and how it would have

28

affected the outcome. Unlike defense counsel in ***Wiggins v. Smith***, 539 U.S. 510, 123 S.Ct. 2527, 156 L. Ed. 2d 471 (2003), who failed to discover and present powerful mitigating evidence, Bell's counsel discovered and presented significant mitigating evidence. Therefore, this claim is without merit.

### G. State's closing argument

¶80.    Bell claims that counsel failed to object to improper statements made by the prosecution, which provided in part the prosecutor's personal opinions and Bell's apparent lack of remorse.[4] Responding, the State maintains that on direct appeal this Court approved the language used in closing argument; therefore, counsel cannot be ineffective for failing to object. *See **Bell***, 725 So.2d at 861-63. In the direct appeal, because counsel failed to object, the Court reviewed the prosecutor's comments under the plain error standard. ***Id.*** at 861. The Court ruled that assignment of error based on the prosecutor's comments were "both procedurally barred and without merit." ***Id.*** at 862. The Court found that such comments were permissible deductions and "simply fair commentary on behavior and testimony by Bell which was in evidence." ***Id.*** at 862, citing ***Chase v. State***, 645 So.2d 829, 855 (Miss. 1994); ***Davis v. State***, 660 So.2d 1228, 1250 (Miss. 1995).

### H. Jury Instructions.

---

[4] Alleged illicit comments made by the prosecutor during his closing argument include: (1) "I don't see any [good in Frederick Bell]; (2) "That same day he murdered Bert Bell here in Grenada. That shows you how much remorse he had for the crime he committed down here. It shows you how upset it made him for the taking of a life, the life of Bert Bell. He had no feelings for human life at all, and he has none now."; (3) "He was proud of that [killing Bert Bell]. Just as proud as he was of the person he killed in Memphis. This shows you again what type of person you're dealing with. It shows you how much feeling he has for human life."; (4) "His mother asked the question up here, 'what would stop it.' There's only one thing that can stop it, and I think ya'll know what that [sic] it; that's coming back with the death penalty."

¶81.    Bell claims that counsel failed to have the jury instructed regarding the effect of the Tennessee sentence and failed to object to the trial court's "anti-sympathy" instruction and instruction S-1, which he alleges allowed the jury to consider "non-statutory aggravators." This argument is very similar to those which were considered and rejected in the direct appeal.

¶82.    As to the claim regarding instruction S-1 and "non-statutory aggravators," the Court finds that it is without merit. In the direct appeal, the Court affirmed these instructions and held that they did not interject unwarranted aggravating factors or allow the jury to "venture out on a hunt for other justifications for ordering Bell's death." *Bell*, 725 So.2d at 865. As to the other two arguments, the Court fully reviewed them and ruled that they were procedurally barred based on Bell's failure to object to them at trial. *Id.* at 865 & 867. Relying on *Willie v. State*, 585 So.2d 660 (Miss. 1991) and *California v. Brown*, 479 U.S. 538, 107 S.Ct. 837, 93 L.Ed.2d 934 (1987), the Court stated that issue of anti-sympathy instruction was "unmeritorious in light of the holdings of the United States Supreme Court supporting the use of the anti-sympathy language." *Bell*, 725 So.2d at 865. *See also Woodward v. State*, 843 So.2d 1. Therefore, based on *Willie* and *Brown* trial counsel's failure to object to such instructions does not support Bell's claim of ineffective assistance of counsel.

¶83.    Finally, Bell claims that counsel failed to present instruction to the trial court regarding the effect his Tennessee sentence would have if he was sentenced to life in this matter. Because Bell fails to cite any case where such failure supports a claim of ineffective assistance of counsel, this issue is without merit. Instead, Bell relies on the *Simmons v. South Carolina*, 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), which was decided after his trial. In *Simmons*, the Supreme Court held that in a case in which

30

propensity for future dangerous conduct is argued as a factor, and a sentence to life imprisonment without the possibility of parole is an option, the defendant is entitled to have the jury instructed that a life sentence will in fact preclude the possibility of parole. *Id*. at 169.

¶84.	Considering this issue in the direct appeal, the Court found that the State argued the violent nature of the crime, as opposed to Bell's propensity for future crime, as an additional aggravating circumstance. *Bell* at 725 So.2d at 865. Holding that Bell's claim was substantively without merit, the Court stated:

> Because Bell sought no such instruction, and the State did not attempt to argue on the point, we are left to wonder what Bell's argument would have been if in fact the jury had been instructed that in deciding between life and death it was to consider the length of not only a Mississippi life sentence but also the length of the Tennessee sentence and the time that Bell would actually serve under each, and if the State had then argued the effect of the possibility of parole.

*Bell*, 725 So.2d at 865.

¶85.	Because *Simmons* was not decided until after the direct appeal and because the Court held that Bell's propensity for future dangerous was not argued as an additional aggravating factor, the Court finds that counsel's failure to request such instruction was not outside the prevailing professional norms.

## IV.	Cumulative Error.

¶86.	We note in today's case that each of the foregoing assignments of error have been found to be without merit, and we thus find that there was no cumulative error. *Byrom v. State*, 863 So.2d 836, 847 (Miss. 2003); *McFee v. State*, 511 So.2d 130, 136 (Miss. 1987).

## CONCLUSION

¶87.	For the reasons herein stated, the Court denies leave to seek post-conviction relief on all issues raised in Bell's petition for post-conviction relief.

31

¶88.   **APPLICATION FOR LEAVE TO FILE PETITION FOR POST- CONVICTION COLLATERAL RELIEF, DENIED.  PRO SE PETITION FOR POST-CONVICTION RELIEF, DENIED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., EASLEY, GRAVES AND DICKINSON, JJ., CONCUR.  DIAZ AND RANDOLPH, JJ., NOT PARTICIPATING.**