# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2004-KP-02287-SCT

*HERMAN SIPP, JR.*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/26/2004 |
| TRIAL JUDGE: | HON. ROBERT P. KREBS |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: W. GLENN WATTS |
| DISTRICT ATTORNEY: | ANTHONY LAWRENCE, III |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/22/2006 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., WALLER, P.J., AND DICKINSON, J.**

**WALLER, PRESIDING JUSTICE, FOR THE COURT:**

¶1.     Herman Sipp, Jr. appeals from his conviction in Jackson County Circuit Court of murder and sentence of life imprisonment in the custody of the Mississippi Department of Corrections. We affirm.

## FACTS

¶2.     Ann Loper and Herman Sipp, Jr. were involved in a dating relationship for several years. Though the relationship ended, Loper and Sipp continued to share an apartment. Loper then began to date Jimmy Neal Kelly. Loper knew of Sipp's jealous tendencies and attempted to keep her relationship with Kelly hidden from Sipp. Sipp, however, soon discovered the existence of Loper and Kelly's relationship. On the night of December 4, 2001, Loper and Kelly were leaving Kelly's residence at around one o'clock in

the morning when Kelly was shot in the back. Kelly later died as a result of injuries sustained from his gunshot wound.

¶3.     Following the shooting, Sipp went to the apartment of Gary Lewis, Jr., a neighbor of Sipp's. Lewis stated that Sipp seemed agitated, nervous, kept making comments about the police coming, and even admitted to Lewis that he had shot at Kelly. Sipp also asked Lewis to provide an alibi for him during the hours surrounding the shooting even though he was not with Lewis at the time.

¶4.     Sipp was arrested and charged with Kelly's murder. Police determined that the weapon used in the shooting was a high-powered rifle, but no bullet casings were recovered at the scene. Sipp was discovered to have borrowed a high-caliber, Russian rifle from his brother, Abram Sipp, not long before Kelly was shot and returned the gun a few days after Kelly's shooting. According to a police report, Abram Sipp told police that when Herman Sipp returned the gun two bullets were missing, though Abram was unable to recollect those details on cross-examination by the State. Ann Loper testified she heard a voice threatening to shoot her, too, and believed the voice to be Sipp's. Additionally, Richard Dixon, a fellow inmate of Sipp's, stated that Sipp confessed to shooting Kelly. Sipp denied confessing to the crime to anyone. Sipp stated he was at a party for much of the evening of Kelly's shooting, but witnesses who attended the party testified that Sipp was noticeably absent around ten o'clock and was not seen after that time. Sipp stated he was at Lewis's home from midnight until four o'clock in the morning after smoking marijuana, and, thus, could not have shot Kelly. Other witnesses added little to Sipp's case other than to state they had never seen Sipp with the gun allegedly used to kill Kelly and to attempt to damage the credibility of Richard Dixon.

2

¶5.    After six hours of deliberations, the jury was summoned to give an update on their progress.  The jury foreman stated there was a nine to three split among the jury, and it was his belief that the split would not be resolved that night.  The circuit court suggested sending the jury home for the night and allowing them to continue deliberations the next day.  Sipp argued against such a break and moved for the court to declare the jury hung.  The circuit judge refused to declare a hung jury and recessed the trial until the next morning.  The jury reached a unanimous verdict the following day and found Sipp guilty of Kelly's murder.  The circuit judge immediately sentenced Sipp to life in prison.

## ISSUES

### 1. Whether the Circuit Court Erred in Refusing to Declare a Mistrial

¶6.    Sipp contends the circuit court erred by allowing the State to use a statement made by Sipp to impeach him.  He argues that the State's use of that statement warranted the declaration of a mistrial because police violated his *Miranda* and Fifth and Sixth Amendment rights by procuring his statement after he had invoked his right to counsel. *See Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).  At issue is a statement concerning Sipp's participation in and injury from the breaking of a window at Kelly's home a few weeks before Kelly's murder.  At the time of his statement, Sipp was in police custody and had been given a Miranda warning more than once.  Sipp refused to sign a Miranda waiver and asked for his mother and attorney.  Police continued to question Sipp, and Sipp made statements concerning a cut on his hand he received while breaking a window at Kelly's home a few weeks before Kelly's murder.  At trial, the State used Sipp's statement for impeachment purposes during cross-examination of Sipp.  Sipp objected to the use of the statement by the State and moved for a mistrial.  The

3

circuit judge denied Sipp's motion and allowed the State to use the statement for impeachment purposes only.

¶7.     We review motions for mistrial under an abuse of discretion standard. *Tate v. State*, 912 So. 2d 919, 932 (Miss. 2005).   The trial court must declare a mistrial when there is an error in the proceedings resulting in substantial and irreparable prejudice to the defendant's case; however, the trial judge is permitted considerable discretion in determining whether a mistrial is warranted since the judge is best positioned for measuring the prejudicial effect. *Id*. (citing *Gossett v. State*, 660 So. 2d 1285, 1290-91 (Miss. 1995); *Roundtree v. State*, 568 So. 2d 1173, 1178 (Miss. 1990)).

¶8.     We have stated that a voluntary statement that is inadmissible due to some technical violation of *Miranda* or is inadmissible because it is in violation of a defendant's Fifth or Sixth Amendment rights can be used for impeachment purposes.   *See Cooley v. State*, 391 So. 2d 614, 619-21 (Miss. 1980) (Defendant, on trial for murder, could be impeached with statements made to police about his "accidentally shooting a victim" in order to determine the general truthfulness of defendant's testimony.  We went on to state that when a defendant takes the stand and testifies, he may be impeached by his own statements - even if those statements were taken in violation of his *Miranda* rights); *Bogard v. State*, 624 So. 2d 1313, 1318-19 (Miss. 1993) (Defendant on trial for burglary and aggravated assault could be impeached with testimony concerning his presence at a victim's home even if that statement was procured after defendant had pleaded the Fifth and/or requested counsel.  Only a showing by defendant that the statement was not voluntarily given could exclude the statement).  Concerning voluntariness, Sipp has not shown that he was threatened, mistreated, intoxicated, under the influence of drugs, or promised anything to make the statement. *Id*.  Because Sipp's statement was made voluntarily, and the State made no attempt to use

4

Sipp's statement in its case-in-chief, we cannot say the circuit court erred in allowing the State to use Sipp's statement for impeachment purposes.

¶9.     Sipp also argues the circuit court should have issued a limiting instruction to the jury to clarify that Sipp's testimony about cutting his hand was strictly for impeachment purposes.  However, we have stated that because a limiting instruction can actually focus the jury's attention on sensitive information, it is the responsibility of defense counsel to ask for the instruction.  **Brown v. State**, 890 So. 2d 901, 913 (Miss. 2004).  The record does not reflect that Sipp ever moved for the limiting instruction to be given, and, as such, the circuit judge did not err by failing to give such an instruction to the jury.

**2. Whether the Circuit Court Erred by Denying Defendant's Motion to Introduce Defense Exhibits into Evidence**

¶10.    Sipp asserts the circuit court erred in denying Sipp's motion to allow Defense Exhibits 3, 4, 5, and 6 to be introduced into evidence for purposes of showing the improbability that the victim was shot from the position indicated by the State.  After cross-examining the State's witness, Dr. Paul McGarry, concerning the angles and trajectory of the bullet that killed Kelly, Sipp attempted to have exhibits showing parts of the scene and angle overlays admitted into evidence.  The defense had no expert or witness to testify as to the validity or accuracy of the proposed evidence, and only defense counsel could vouch for its reliability. The State objected to the exhibits being introduced into evidence.  The circuit judge did not allow the exhibits to be placed into evidence, but he did allow them to be marked for identification.

¶11.    Judges enjoy a great deal of discretion concerning the relevance and admissibility of evidence.  **Gilley v. State**, 748 So. 2d 123, 126 (Miss. 1999).  Only if the judge abuses that discretion to the prejudice of the accused will we reverse such a ruling.  **Id**.  Demonstrative aids or diagrams should only

5

be allowed when they are based on evidence presented. *See Jordan v. State*, 786 So. 2d 987, 1016-17 (Miss. 2001); *See also Cox v. State*, 849 So. 2d 1257, 1273 (Miss. 2003) (holding that computer-generated animation should only be admitted where defendant gave specific, scientific data used to create the animation to ensure its accuracy); *Ware v. State*, 790 So. 2d 201, 207 (Miss. App. 2001) (finding that failure of a lay witness to justify why he projected impact of auto accident a certain way on a diagram warranted exclusion of the diagram). Sipp failed to show how the diagrams and trajectory estimates he wanted to be placed into evidence had any scientific justification, expert basis, or basis in first hand knowledge. As such, the circuit court did not err in excluding the diagrams as evidence.

**3. Jury Issues**

¶12.    Sipp's next contention of error centers around the amount of time the jury spent deliberating. After six hours of deliberation, the circuit judge called the jury back into the courtroom to check on their progress in reaching a verdict. The jury's foreman indicated that strides were being made toward a unanimous vote, but he was not sure a verdict could be reached that night. He was hopeful, however, that a unanimous decision could be reached soon. Sipp objected to allowing the jurors to deliberate any longer and moved to declare a hung jury. The circuit judge refused to find a hung jury, recessed the court, and instructed the jury to return the next morning to continue deliberations. Sipp argues that the circuit court's refusal to declare a hung jury was reversible error.

¶13.    This Court has acknowledged that it is within the sound discretion of the trial judge as to how long he will keep the jury in deliberation, and "this discretion will not be reviewed on appeal unless there has been a clear abuse of discretion." *Greenlee v. State*, 725 So. 2d 816, 824 (Miss. 1998) (quoting *Dixon v. State*, 306 So.2d 302, 304 (Miss.1975)). Additionally, there is no bright line rule as to when a judge

should grant a continuance or a recess, and this Court's analysis must focus on the unique facts of the case. *Hooker v. State*, 716 So. 2d 1104, 1113-14 (Miss. 1998). Because deliberations had taken only six hours, progress was being made, the jury foreman was hopeful that a unanimous decision could be reached, and the judge allowed the jury to recess for the evening for rest, we cannot find that the circuit judge abused his discretion in refusing to declare a mistrial and recessing jury deliberations overnight in the present case. *Id*. *See also Isom v. State*, 481 So. 2d 820 (Miss. 1985); *Grimsley v. Tyner*, 454 So. 2d 482 (Miss. 1984).

¶14.    Sipp also argues the circuit court erred by failing to question each of the jurors on whether or not they had read a newspaper article that Sipp's counsel found to be adverse to Sipp's case. This argument is completely without merit. The trial judge asked the jury as a whole whether any of them had discussed the case with anyone, whether they had avoided televisions, newspapers, and radios, and whether they had read any articles concerning the case. The record is completely devoid of any comments or indications by the members of the jury that any of them had been inappropriately contacted or had viewed restricted forms of media. Sipp has failed to cite any relevant authority to the contrary, and we do not find that the judge's use of general, instead of individualized, questioning was error.

**4. Whether the Circuit Court Erred in Overruling Sipp's Objection to the State's Closing Argument**.

¶15.    Sipp contends the circuit court erred by allowing the State to make a statement concerning the exact time Sipp returned to Gary Lewis's house the night of Kelly's murder. Sipp objected to the State's assertion of his presence at Lewis's home at a specific time because, Sipp argued, the exact time was not

a fact in evidence. The circuit court overruled Sipp's objection and allowed the State to continue its closing argument.

¶16.    We have stated that prosecutors are generally entitled to great latitude when framing a closing argument absent impermissible factors like commenting on a defendant's failure or refusal to testify. *Dunaway v. State*,  551 So. 2d 162, 163-64 (Miss. 1989).  Prosecutors are bound "to the facts introduced in evidence and to the fair and reasonable deduction[s] and conclusions to be drawn therefrom." *Id*.  In the present case, the prosecutor was simply presenting to the jury his own deductions of Sipp's whereabouts based on witness testimony.  As a finder of fact, the jury was free to accept or disregard the prosecutor's conclusions concerning the whereabouts of Sipp and were even encouraged to consider disregarding it by defense counsel's challenge.  We do not find that the prosecutor's comments were of an impermissible nature.

**5. Denial of Motion for a Directed Verdict.**

¶17.    Sipp argues the circuit court erred when it denied his motion for a directed verdict.  A motion for a directed verdict implicates the sufficiency of the evidence presented at trial. *Anderson v. State*,  904 So. 2d 973, 977 (Miss. 2004) (citing *Shelton v. State*, 853 So. 2d 1171, 1186 (Miss. 2003)).  When considering whether the evidence is sufficient to sustain a conviction in the face of a motion for directed verdict or for judgment notwithstanding the verdict, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Bush v. State*, 895 So. 2d 836, 843 (Miss. 2005) (citing *Carr v. State*, 208 So. 2d 886, 889 (Miss. 1968)).

¶18.    In the present case, two witnesses testified that Sipp confessed to shooting Kelly.  Sipp's alibi could not be confirmed by any of the people he alleged he had been with before, during, or after the time of Kelly's shooting, and circumstantial evidence concerning the weapon used to kill Kelly also pointed to Sipp as the shooter.  After viewing the evidence in the light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  As such, we do not find that the circuit court erred when it denied Parks's motions for directed verdict and judgment notwithstanding the verdict.

**6. Weight of the Evidence**

¶19.    Sipp also argues that the jury's guilty verdict is against the overwhelming weight of the evidence. When reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror" reviewing the evidence in a light most favorable to the verdict, and we will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice. ***Bush v. State***,  895 So. 2d 836, 844-45 (Miss. 2005) (citing ***Herring v. State***, 691 So. 2d 948, 957 (Miss. 1997)).  Considering the amount of testimony and evidence presented by the State as outlined above, we cannot say that the verdict of the jury was contrary to the weight of the evidence before it.

**7. Ineffective Assistance of Counsel**

¶20.    Sipp argues his defense counsel was constitutionally ineffective in two ways.  First, Sipp contends his counsel was ineffective when he failed to object to two statements made concerning an allegation that Sipp made copies of Laura Loper's keys.  Second, Sipp maintains that his failure to call Queta McDavid, Kelly's former girlfriend,  to the stand further rendered his counsel ineffective.  Sipp suggests that by calling

9

McDavid his defense counsel could have demonstrated that she broke the window in Kelly's house a few weeks before Kelly was shot. In addition, Sipp contends that by calling McDavid to the stand the jury might have been convinced that she killed Kelly out of anger and jealousy over his relationship with Ann Loper.

¶21. When considering considering claims of ineffective assistance of counsel, we follow the guidelines provided by the United States Supreme Court. *See Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). The "benchmark for judging any claim of ineffectiveness [of counsel] must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Id*. at 686. To succeed on a claim of constitutionally ineffective counsel, a defendant must show both that (1) the counsel's performance was deficient and (2) the deficient performance deprived the defendant of a fair trial. *Bell v. State*, 879 So. 2d 423, 430 (Miss. 2004). Specifically, the inquiry must focus on whether counsel's performance fell below an objective standard of reasonableness. *Id*. at 431. In addition, Sipp must show a reasonable probability that "but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id*. (quoting *Strickland*, 466 U.S. at 691-94).

¶22. Sipp's argument that his attorney was ineffective for failing to object to comments by the State concerning Sipp's copying of keys is without merit. Sipp fails to show the relevance these facts have in the present case. Sipp never states how objecting to or attempting to contradict the State's assertions concerning the copying of Loper's keys would have disproved the evidence presented by the State. As such, Sipp fails to show that his counsel erred in ignoring the irrelevant information, and he fails to convincingly assert that objecting to the statements would have changed the trial's result.

10

¶23. Sipp's suggestion that his counsel's failure to call McDavid as a witness showed a constitutional deficiency also fails. We have stated that an attorney's choice of whether to call certain witnesses and ask certain questions "falls within the ambit of trial strategy and cannot give rise to an ineffective assistance of counsel claim." *Bell*, 879 So. 2d at 434 (quoting *Jackson v. State*, 815 So. 2d 1196, 1200 (Miss. 2002)). Sipp does not allege that McDavid could have provided him with an alibi or even have testified to his innocence. Instead, Sipp merely states that the jury might have found McDavid to be another possible suspect based on her anger with Kelly for ending their relationship and dating Loper. Sipp has not shown that his counsel performed in a deficient manner by failing to have McDavid testify, and Sipp's conjecture about what McDavid might have said and what the jury might have gleaned from her testimony does not meet the *Strickland* standard of showing a reasonable probability that having McDavid testify would have changed the result of the proceedings. Both of Sipp's assertions concerning the ineffectiveness of his counsel are without merit.

### CONCLUSION

¶24. Because all of Sipp's assertions of error are without merit, we affirm the trial court's judgment.

¶25. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED**.

**SMITH, C.J., DIAZ, EASLEY, CARLSON, GRAVES, DICKINSON AND RANDOLPH, JJ., CONCUR. COBB, P.J., NOT PARTICIPATING.**