# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01587-COA

JASON R. CASE A/K/A JASON CASE A/K/A            APPELLANT
JASON ROBERT CASE

v.

STATE OF MISSISSIPPI                                  APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 08/19/2013 |
| TRIAL JUDGE: | HON. DAVID H. STRONG JR. |
| COURT FROM WHICH APPEALED: | LINCOLN COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: GEORGE HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: ALICIA MARIE AINSWORTH |
| DISTRICT ATTORNEY: | DEE BATES |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF TWO COUNTS OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCED TO SERVE FIFTEEN YEARS ON COUNT I, AND SENTENCED TO FIFTEEN YEARS ON COUNT II, WITH FIVE YEARS TO SERVE AND TEN YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONSECUTIVELY, AND TO PAY A $8,000 FINE AND $500 TO THE CRIME VICTIMS' COMPENSATION FUND |
| DISPOSITION: | AFFIRMED: 10/06/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., MAXWELL AND FAIR, JJ.**

**FAIR, J., FOR THE COURT**:

¶1.     Jason Case appeals his conviction of two counts of fondling a child. He claims that (1) the tender-years hearsay exception was improperly applied; (2) that he was irreparably prejudiced by irrelevant character evidence; (3) his trial counsel was constitutionally ineffective; and (4) the trial court erred in allowing the State to refer to him as a "pedophile" during closing arguments. Finding no error, we affirm.

## FACTS

¶2.     In September 2010, the Lincoln County Department of Human Services (DHS) certified Case as a foster parent. Case was the principal at Hazlehurst Middle School and lived alone.

¶3.     In January 2011, Keyla O'Quinn, a DHS family protection specialist, received a report that a mother was using drugs at home in front of her two children – Brian,[1] age thirteen, and Daniel, age nine.[2] DHS immediately took the children into custody, and on that same day placed Brian and Daniel in foster care with Case.

¶4.     Brian and Daniel remained in Case's custody from January 14, 2011, until June 16, 2011. During that time, the children had weekly visitation with DHS. At trial, O'Quinn testified that she additionally scheduled supervised visitation (family team meetings) with the children's parents and other family members. At one of the team meetings, O'Quinn was told of some inappropriate behavior occurring in Case's home. Both children said Case let

---

[1] This Court uses pseudonyms to protect the identity of minors who are victims of sexual abuse.

[2] Brian and Daniel have the same mother but different fathers.

them play with gasoline and fire, and Brian said he almost got burned. O'Quinn also learned that Case let the children sit in his lap and that he posted pictures of the children on Facebook. Case was not present for the team meetings. O'Quinn later informed Case that this type of behavior was unacceptable and that DHS policy prohibits posting pictures of children on the internet. Case never removed the pictures. O'Quinn also testified that she felt Case had a "really unusual and strange" relationship with Daniel. For example, Daniel "was always sitting up under . . . Case's armpits . . . ."

¶5.     In June 2011, Brian and Daniel were placed with one of Daniel's relatives. O'Quinn testified that the children were happy to make the transition. Case, on the other hand, was upset about the new placement. He agreed to meet O'Quinn in the Cracker Barrel parking lot so that she could take the children to their new home.

¶6.     Most of O'Quinn's remaining testimony was admitted under the tender-years hearsay exception.[3] She stated that, while at Cracker Barrel, Brian said that he hoped she was not going to put any girls in Case's home. O'Quinn asked Brian to repeat himself, but he would not. She said that Brian made the statement while the children were moving their belongings out of Case's vehicle. O'Quinn did not follow up on his statement.

¶7.     In January 2012, O'Quinn requested a "fact interview" with Brian after she received a separate report from another investigation. She explained that fact interviews are

---

[3] The judge conducted a hearing outside of the presence of the jury and ruled the testimony admissible.

3

conducted when there are allegations of abuse. When Brian came into her office, she told him that she had concerns about other children that were placed in Case's home. O'Quinn then asked Brian if Case ever touched him in way that made him uncomfortable. At first, Brian made a funny expression and said he was ready to go. But after O'Quinn offered to end the interview, he chose to continue. Brian told O'Quinn that Case touched his penis twice. O'Quinn ended the interview and contacted the Children's Advocacy Center (CAC) for a forensic interview. Brian's statement during his interview at the CAC was consistent with the statement he gave to O'Quinn.

¶8.     Brian testified that he did not like living with Case. He said that Case would give him and Daniel melatonin and Benadryl at night to put them to sleep. After giving them the medications, Case would rock Daniel to sleep. Brian also said that Case would make him sleep in his underwear, even though he preferred to sleep in shorts and a shirt.

¶9.     Brian also testified that Case touched him inappropriately on two separate occasions. The first incident occurred one night while he and Case were watching a movie. Brian had fallen asleep on the love seat, and he woke up when he felt Case's hands in his pants. Brian stated that Case was on the love seat with him, lying behind him, and facing the same way as him. Case was "rubbing" and "jerking" Brian's penis. Brian acted like he was asleep so that Case would leave him alone. The second time, Brian was in his bed. Case came out of Daniel's bedroom and got in bed with Brian, waiting for him to fall asleep. Brian woke up when Case put his hand in his boxers. Brian testified that Case was moving and "jerking"

his penis up and down. Brian slapped Case's hand away and waited for him to leave. Brian also testified that after the second incident, he started locking his bedroom door and wrapping his blanket tightly around him to keep Case from touching him.

¶10. Brian testified that he remembered what he told O'Quinn at Cracker Barrel, and also testified that he told O'Quinn about the two fondling incidents during the January 2012 interview. Brian said that he waited to tell her about the incidents because he was scared. Case did not testify.

**DISCUSSION**

**1. Tender-Years Exception**

¶11. Case argues that the trial court erred in applying the tender-years exception to O'Quinn's hearsay testimony. This Court employs "an abuse-of-discretion standard when reviewing claims that the trial judge erred by admitting hearsay." *White v. State*, 48 So. 3d 454, 456 (¶9) (Miss. 2010) (internal citations omitted).

¶12. Mississippi Rule of Evidence 803(25), also known as the tender-years exception, provides:

> A statement made by a child of tender years describing any act of sexual contact performed with or on the child by another is admissible in evidence if: (a) the court finds, in a hearing conducted outside the presence of the jury, that the time, content, and circumstances of the statement provide substantial indicia of reliability; and (b) the child either (1) testifies at the proceedings; or (2) is unavailable as a witness: provided, that when the child is unavailable as a witness, such statement may be admitted only if there is corroborative evidence of the act.

¶13. On appeal, Case challenges the trial court's finding that Brian was of tender years

when he made the statement and its finding that his statement had substantial indicia of reliability.

¶14.   The Mississippi Supreme Court has held that "there is a rebuttable presumption that a child under the age of twelve is of tender years." *Veasley v. State*, 735 So. 2d 432, 436 (¶16) (Miss. 1999).  The court elaborated, stating:

> Where an alleged sexual abuse victim is twelve or older, there is no such presumption and the trial court must make a case-by-case determination as to whether the victim is of tender years. This determination should be made on the record and based on a factual finding as to the victim's mental and emotional age.  If the court finds that the declarant is of tender years, then it must still rule on the Rule 803(25)(a) and (b) factors before admitting the testimony.

*Veasley*, 735 So. 2d at 437 (¶16).

¶15.   Here, a tender-years hearing was held outside the presence of the jury.  Brian was twelve or older when he reported Case's abuse to O'Quinn, so the trial judge had to first make an on-the-record determination, based on factual findings, that Brian's mental and emotional age was of tender years.

¶16.   During the tender-years hearing, the judge heard O'Quinn's testimony regarding the statements Brian made at Cracker Barrel and in the January 2012 interview.  The judge noted that Brian was thirteen at the time he made those statements to O'Quinn.  Ultimately, the judge held that, based on O'Quinn's testimony, Brian was a child of tender years when he made those statements.  When defense counsel requested a more detailed finding, the judge discussed the fact that Brian was taken from his mother's home at age thirteen and that he

had since lived in at least four different foster homes. The judge elaborated, stating that "[Brian] certainly would not be anymore advanced than an ordinary thirteen-year-old would be and that, in fact, a child who had been subjected to that environment . . . would probably be behind other children mentally and emotionally who had grown up in a stable two-parent family home . . . ." We find the judge's ruling is supported by a sufficient on-the-record determination.

¶17.    Next, to determine whether Brian's statements have substantial indicia of reliability, the trial judge must make an on-the-record finding, considering the twelve factors provided in Rule 803(25)'s official comment.[4] However, each factor need not be discussed separately by the trial judge, so long as the record supports a "finding that the victim's statements bore indicia of reliability." *Elkins v. State*, 918 So. 2d 828, 833 (¶18) (Miss. Ct. App. 2005)

---

[4] These factors, often referred to as the *Wright* factors, *e.g.*, *Hennington v. State*, 702 So. 2d 403, 415-17 (¶¶54, 62) (Miss. 1997) (citing *Idaho v. Wright*, 497 U.S. 805, 821-22 (1990)), include:

(1) whether there is an apparent motive on declarant's part to lie;
(2) the general character of the declarant;
(3) whether more than one person heard the statements;
(4) whether the statements were made spontaneously;
(5) the timing of the declarations;
(6) the relationship between the declarant and the witness;
(7) the possibility of the declarant's faulty recollection is remote;
(8) certainty that the statements were made;
(9) the credibility of the person testifying about the statements;
(10) the age or maturity of the declarant;
(11) whether suggestive techniques were used in eliciting the statement; and
(12) whether the declarant's age, knowledge, and experience make it unlikely that the declarant fabricated.

7

(citation omitted).

¶18. After finding Brian was a child of tender years, the judge continued his analysis and considered the twelve factors in an effort to determine whether Brian's statements bore substantial indicia of reliability. The judge made the following findings on the record: (1) Brian's statement to O'Quinn at Cracker Barrel that she should not place any girls with Case was "textbook spontaneous"; (2) Brian's "funny expression" at the interview in response to O'Quinn asking whether Case had ever inappropriately touched him was evidence of the spontaneity of his subsequent statement, despite the fact that the statement was given in response to a question; (3) there is no blood relationship between O'Quinn and Brian; (4) no special relationship between O'Quinn and Brian had been established; and (5) the inference was made that Brian's statement to O'Quinn was corroborated by his statements to the CAC in McComb. Because the trial judge supported his findings with substantial evidence, we reject Case's argument that this finding was an abuse of discretion.

¶19. Even if it was error to admit O'Quinn's testimony based on lack of reliability, the error would be harmless. As recently discussed in *Webb v. State*, this Court applies a harmless-error analysis when the trial court fails to make an on-the-record finding of indicia of reliability. *Webb v. State*, 113 So. 3d 592, 601 (¶30) (Miss. Ct. App. 2012) (citing *Klauk v. State*, 940 So. 2d 954, 956-57 (¶7) (Miss. Ct. App. 2006) (citation omitted)). The harmless-error test instructs this Court to "determine whether the weight of the evidence against the defendant is sufficient to outweigh the harm done by allowing admission of the

8

evidence." *Veasley*, 735 So. 2d at 437 (¶7) (quoting *Fuselier v. State*, 702 So. 2d 388, 391 (¶9) (Miss. 1997)). In *Klauk*, we held that, absent the challenged hearsay testimony, "the victim's testimony was sufficient to convict the perpetrator." *Webb*, 113 So. 2d at 601 (¶30) (citing *Klauk*, 940 So. 2d at 957 (¶8)).

¶20. Here, without O'Quinn's testimony, there was still sufficient evidence to convict Case. Brian testified at trial and was subject to wide-open cross-examination by Case's attorney. Specifically, Brian not only testified that Case touched his penis on two different occasions, but also addressed his statements to O'Quinn and his behavior during both the custody exchange at Cracker Barrel and the interview. Under the circumstances set out above, we find no reversible error.

## 2. Character Evidence

¶21. Case argues the trial court erred in allowing the State to admit "unfounded, irrelevant, and highly prejudicial" character evidence. Case specifically refers to the State's evidence that he placed photographs of the children on Facebook and that he allowed the children to play with gasoline. Our supreme court has held, "[a]n objection must be made with specificity, and failure to articulate the grounds for objection constitutes a waiver of the alleged error." *Smith v. State*, 986 So. 2d 290, 295 (¶13) (Miss. 2008) (quoting *Ross v. State*, 954 So. 2d 968, 987 (¶27) (Miss. 2007)). Case failed to object on the ground of irrelevant character evidence. Consequently, he waived any argument concerning character evidence when he failed to raise it in the trial court.

### 3. Ineffective Assistance of Counsel

¶22. Case also argues that his counsel was ineffective by failing to object to the "damaging[,] irrelevant character evidence" previously discussed. The State responds that defense counsel's decision not to object to certain evidence was strategic, and therefore does not give rise to an ineffective-assistance-of-counsel claim. *See, e.g., Hall v. State*, 735 So. 2d 1124, 1127 (¶10) (Miss. Ct. App. 1999) (stating that having a trial strategy negates an ineffective-assistance-of-counsel claim, despite counsel's insufficiencies).

¶23. The Mississippi Supreme Court has stated:

> It is unusual for this [c]ourt to consider a claim of ineffective assistance of counsel when the claim is made on direct appeal. This is because we are limited to the trial court record in our review of the claim[,] and there is usually insufficient evidence within the record to evaluate the claim . . . . [W]here the record cannot support an ineffective assistance of counsel claim on direct appeal, the appropriate conclusion is to deny relief, preserving the defendant's right to argue the same issue through a petition for post-conviction relief. This Court will rule on the merits on the rare occasions where (1) the record affirmatively shows ineffectiveness of constitutional dimensions, or (2) the parties stipulate that the record is adequate to allow the appellate court to make the finding without consideration of the findings of fact of the trial judge.

*Wilcher v. State*, 863 So. 2d 776, 825 (¶171) (Miss. 2003) (internal citations and quotations omitted). The record does not affirmatively indicate that Case suffered denial of effective assistance of counsel of constitutional dimensions. Nor have the parties stipulated that the record was adequate to allow this Court to make a finding without considering the findings of fact by the trial judge. We therefore decline to address this issue without prejudice to Case's right to seek post-conviction relief if he chooses to do so.

10

### 4. Prosecutorial Comments

¶24.    Case next argues that the trial court erred in allowing the prosecutor to refer to Case as a pedophile in his closing argument, as stated below:

> The State of Mississippi thought it is better to take these children away from their mother's drug use and then they put them with a pedophile. The State of Mississippi, to their discredit, is saying we have to deal with the pedophile. . . . What man would routinely give them Benadryl to . . . try to make 'em go to sleep? Who does that? I don't. You have been charged here with being reasonable people to see who is telling the truth. I stand here and tell you that responsibility . . . for a pedophile, to place with a pedophile, that's all it is.

¶25.    Case failed to object until the end of the State's closing argument. Case also failed to request a jury instruction prohibiting the jury from considering the prosecutor's remarks. So the issue is barred on appeal. *Havard v. State*, 94 So. 3d 229, 236 (¶14) (Miss. 2012).

¶26.    Procedural bar notwithstanding, Case's argument fails. "Attorneys on both sides are generally afforded broad latitude during closing arguments . . . [s]o long as counsel in his address to the jury keeps fairly within the evidence and the issues involved . . . ." *Moffett v. State*, 156 So. 3d 835, 857 (¶61) (Miss. 2014) (citation and quotations omitted). Here, the prosecutor's comments, taken in context, show that the prosecutor was commenting on the facts presented in the evidence. Thus, we cannot say the prosecutor's comments were improper.

¶27.    **THE JUDGMENT OF THE CIRCUIT COURT OF LINCOLN COUNTY OF CONVICTION OF TWO COUNTS OF TOUCHING A CHILD FOR LUSTFUL PURPOSES AND SENTENCE TO SERVE FIFTEEN YEARS ON COUNT I, AND SENTENCE OF FIFTEEN YEARS ON COUNT II, WITH FIVE YEARS TO SERVE AND TEN YEARS SUSPENDED, FOLLOWED BY FIVE YEARS OF POST-RELEASE SUPERVISION, ALL IN THE CUSTODY OF THE MISSISSIPPI**

DEPARTMENT OF CORRECTIONS, WITH THE SENTENCES TO RUN CONSECUTIVELY, AND TO PAY A $8,000 FINE AND $500 TO THE CRIME VICTIMS' COMPENSATION FUND, IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO LINCOLN COUNTY.

LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, ISHEE, CARLTON, MAXWELL, JAMES AND WILSON, JJ., CONCUR.