# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-KA-00491-COA

ANTOINE CARR, JR. A/K/A ANTOINE CARR                APPELLANT

v.

STATE OF MISSISSIPPI                                  APPELLEE

DATE OF JUDGMENT:               05/12/2022
TRIAL JUDGE:                       HON. WINSTON L. KIDD
COURT FROM WHICH APPEALED:    HINDS COUNTY CIRCUIT COURT,
                                    FIRST JUDICIAL DISTRICT
ATTORNEY FOR APPELLANT:        KAYLYN HAVRILLA McCLINTON
ATTORNEY FOR APPELLEE:          OFFICE OF THE ATTORNEY GENERAL
                                    BY: ALEXANDRA LEBRON
DISTRICT ATTORNEY:                 JODY EDWARD OWENS II
NATURE OF THE CASE:               CRIMINAL - FELONY
DISPOSITION:                       AFFIRMED - 05/21/2024
MOTION FOR REHEARING FILED:

**BEFORE CARLTON, P.J., GREENLEE AND WESTBROOKS, JJ.**

**CARLTON, P.J., FOR THE COURT:**

¶1.    Antoine Carr was convicted of first-degree murder in the Hinds County Circuit Court and sentenced to life imprisonment in the custody of the Mississippi Department of Corrections (MDOC). Antoine now appeals his conviction, arguing that the State committed prosecutorial misconduct during its closing arguments.

¶2.    After our review, we find no error. We therefore affirm Antoine's conviction and sentence.

## FACTS

¶3.    In September 2019, Antoine was indicted for the murder of Lonnie Taylor. Antoine's

indictment alleged that he was acting in concert with Marshun Carr and Monya Davis when he shot Lonnie with deliberate design to cause Lonnie's death, in violation of Mississippi Code Annotated section 97-3-19(1)(a) (Supp. 2017).

¶4. At Antoine's trial, the jury heard testimony from two eyewitnesses to the shooting: Ashanti Jones, Lonnie's girlfriend, and Sonata Lewis, who was dating Monya Davis at the time of the shooting. The jury also heard testimony from two officers from the Jackson Police Department, an expert in firearms examination, and Dr. Mark LeVaughn, an expert in forensic pathology.

¶5. Ashanti testified that on the evening of April 29, 2018, she and Lonnie went to dinner and a movie. Ashanti needed to return a phone charger to her friend who was living on Montebello Drive in Jackson, Mississippi; so after the movie, Lonnie drove Ashanti to the house. Ashanti testified that Lonnie was driving his silver Mercedes sports utility vehicle (SUV). Ashanti explained that during the drive, she was looking at her phone and not paying attention to her surroundings. However, Ashanti did recall seeing Lonnie stop shortly before reaching Montebello Drive at a railway crossing and wait for a train to pass.

¶6. After the train passed, Lonnie turned onto Montebello Drive. Ashanti testified that she then heard "one or two gunshots, and then . . . some more, and they sounded even closer." Ashanti realized that the gunshots were hitting the SUV. Ashanti felt the vehicle swerve, and Lonnie pushed her toward the floor of the SUV to protect her. The SUV then crashed into a house and came to a stop. Ashanti testified that after the SUV came to a stop, she remained inside until she was sure that the shooting had stopped. Ashanti testified that

2

as she waited, she realized that Lonnie had been shot in the head. She then exited the vehicle and called 911.

¶7.    Sonata Lewis testified that on the same evening (April 29, 2018), she, Antoine, Marshun, and Monya were riding around in Sonata's car. Sonata stated that after she became too impaired to drive, she allowed Monya to drive her car. Sonata testified that all three men had a gun with them in the car, and she described Antoine's gun as an "automatic black gun."

¶8.    Sonata testified that one point while Monya was driving her car, they came to a stop at a railway crossing behind a silver SUV. According to Sonata, Monya observed an open space between the SUV and the railway crossing, so he pulled up and stopped in front of the SUV. After the train passed, Monya drove over the tracks and turned into a neighborhood. Sonata testified that as Monya drove through the neighborhood, the silver SUV followed behind them. Sonata stated that the three men commented that the SUV's headlights were too bright, and they grew concerned that the SUV was following them. Sonata testified that after Monya turned the car onto Montebello Drive, he stated that if the SUV continued to follow them, he was going to stop and get out. Monya stopped the car, and the SUV then drove past Sonata's vehicle. Sonata stated that after the SUV passed them, all three men exited the car and began shooting at the back of the SUV. Sonata testified that during the shooting, she observed the SUV drive off of the road and into a yard. The men then got back into Sonata's car and drove to a nearby hangout spot. Sonata testified Antoine told her that after the shooting, he sold his gun.

¶9.    While investigating Lonnie's death, law enforcement officers approached Sonata

3

while she was at work. Sonata provided a statement to the officers, admitting that she was in the car at the time of Lonnie's murder and identifying Antoine, Monya, and Marshun as the shooters.

¶10. Dr. LeVaughn, the medical examiner, testified that Lonnie's cause of death was a gunshot wound to the head and that the manner of death was homicide.

¶11. The jury returned a verdict finding Antoine guilty of first-degree (deliberate-design) murder, and the trial court sentenced Antoine to a term of life imprisonment in the custody of the MDOC. This appeal followed.

## DISCUSSION

¶12. Antoine's sole argument on appeal is that the prosecutor's closing arguments amounted to prosecutorial misconduct. Antoine claims that the prosecutor made numerous impermissible and inappropriate comments regarding Antoine, the evidence presented, the veracity of the witnesses, the amount of time the jury should deliberate, and the jurors' intelligence.

¶13. Antoine acknowledges that because he failed to object during the State's closing arguments, his arguments are procedurally barred on appeal. *Evans v. State*, 226 So. 3d 1, 31 (¶78) (Miss. 2017). However, Antoine asks this Court to review the issue for plain error, arguing that the individual and cumulative effect of the State's closing arguments prejudiced Antoine and rendered his trial fundamentally unfair. The Mississippi Supreme Court has held that "the plain error doctrine will be applied to closing arguments when the substance of the statement is out of bounds for closing arguments." *Spiers v. State*, 361 So. 3d 643, 662

4

(¶70) (Miss. 2023) (internal quotation marks omitted); *see also Ambrose v. State*, 254 So. 3d 77, 129 (¶161) (Miss. 2018). "To determine whether the statement was out of bounds, we must find that the prosecutor's statement was so inflammatory that the trial judge should have objected on his own motion." *Spiers*, 361 So. 3d at 662 (¶70) (internal quotation marks omitted). Additionally, we must consider "[a]ny allegedly improper prosecutorial comment . . . in context, considering the circumstances of the case, when deciding on their propriety." *Ronk v. State*, 172 So. 3d 1112, 1137 (¶60) (Miss. 2015).

¶14.    In determining whether the prosecutor's comments in the case before us rose to this degree, we recognize that "[a]ttorneys are to be given wide latitude in making their closing arguments." *Spiers*, 361 So. 3d at 662 (¶71). The supreme court has clarified that "wide latitude of discussion is allowed" as long as the prosecutor "keeps fairly within the evidence and issues involved." *Id*. Prosecutors are prohibited from using "tactics which are inflammatory, highly prejudicial, or reasonably calculated to unduly influence the jury." *Id*. The trial court should intervene when a prosecutor "departs entirely from the evidence in his arguments or makes statements intended solely to excite the passions or prejudices of the jury, or makes inflammatory and damaging statements of fact not found in the evidence[.]" *Id*. at 662-63 (¶71). Reversible error occurs when "the natural and probable effect of the improper argument of the prosecuting attorney is to create such an unjust prejudice against the accused as to result in a decision influenced by the prejudice so created." *Murry v. State*, 359 So. 3d 1104, 1113 (¶27) (Miss. Ct. App. 2022). When reviewing for plain error, we ask whether the "error has prejudiced the outcome of the trial." *Spiers*, 361 So. 3d at 657 (¶41).

¶15. We turn first to examine Antoine's argument that the prosecutor improperly tried to steer the jury towards and away from certain evidentiary items by appealing to their sense of intelligence. The transcript reflects that during closing argument, the prosecutor told the jury:

> Now the defense is going to get caught up, they're going to try to start throwing jello on the ceiling—and y'all have heard that saying—and hope something is going to stick, anything that will make you not convict this man of killing Lonnie Taylor as he has done. But you're smarter than that, so don't get caught up, don't be running down rabbit holes where they're going to try to send you. Don't let them put up spoke [sic] screens in an effort to blind you to what the truth is, what you know the truth to be, that he's guilty of first degree murder.

¶16. After our review, we find that the prosecutor's statements here did not constitute prosecutorial misconduct. The supreme court has held that it is "within the jury's province to draw reasonable inferences from facts based on experience and common sense." *Howell v. State*, 860 So. 2d 704, 739 (¶125) (Miss. 2003). Accordingly, a prosecutor is permitted to remind the jurors to use their intelligence during deliberations. Moreover, the trial court in this case instructed the jurors that they "were required and expected to use [their] good common sense and sound honest judgment in considering and weighing the testimony of each witness who has testified in this case."

¶17. Antoine also takes issue with the prosecutor's references to the defense's arguments as a "smoke screen." He argues that the prosecutor used this language in an attempt to prevent the jury from considering the arguments and evidence presented by the defense. Antoine further claims that the prosecutor impermissibly encouraged the jury not to make a determination of guilt based on the evidence but, rather, based on "what [they] know the truth

6

to be."

¶18.    We find no merit to Antoine's argument.  Our supreme court has held that it is not improper for a prosecutor to "comment on the defendant's failure . . . to put on a successful defense."  *Jimpson v. State*, 532 So. 2d 985, 991 (Miss. 1988) (emphasis omitted).  Furthermore, our review of the prosecutor's closing arguments as a whole shows that the prosecutor encouraged the jury to remember the evidence presented at trial and to "focus on the evidence."

¶19.    Antoine next asserts that the prosecutor improperly rushed the jury to reach a verdict quickly, rather than carefully, by telling the jury: "[T]here's no need to tarry in your deliberations because this is a simple case," and "we ask that you go back to your deliberations and that you find Antoine Carr guilty of first degree murder because he is guilty of first degree murder. It shouldn't take long."

¶20.    We find no merit to Antoine's assertion that the prosecutor's statements rushed the jury.  Our review of the prosecutor's closing arguments as a whole show that at no point did the prosecutor imply a sense of urgency.  Rather, she simply summarized the evidence and then commented on it.  We recognize that "prosecutors have a right to comment on the evidence."  *Robinson v. State*, 247 So. 3d 1212, 1231 (¶47) (Miss. 2018).  Additionally, prosecutors may "comment upon any facts introduced into evidence, and may draw whatever deductions and inferences that seem proper from the facts."  *Ross v. State*, 954 So. 2d 968, 1002 (¶74) (Miss. 2007) (citing *Bell v. State*, 725 So. 2d 836, 851 (Miss. 1998)).

¶21.    Antoine next argues the prosecutor made repetitive statements about Antoine's guilt.

Prosecutors are not allowed to comment on their personal beliefs concerning a defendant's guilt or innocence. *Mack v. State*, 650 So. 2d 1289, 1320-21 (Miss. 1994). Antoine specifically takes issue with the following statements by the prosecutor: "Antoine Carr is a cold-blooded murderer"; "He's guilty of first degree murder"; and "He's clearly guilty of first degree murder. You don't even have to consider second degree murder."

¶22. In *Robinson*, our supreme court addressed a similar argument and found no merit. *Robinson*, 247 So. 3d at 1231-32 (¶46). In that case, the prosecutor made the following statement to the jury during closing arguments: "I ask you to please consider the evidence, listen to what every witness has told you, look at all the physical evidence and find [Robinson] guilty on all three counts of aggravated assault because that's what he's guilty of." *Id*. at 1232 (¶46). Robinson appealed, arguing that in making this statement, the prosecutor improperly expressed his personal opinion about Robinson's guilt. *Id*. Upon review, the supreme court held that while prosecutors are not allowed to comment on their personal beliefs about a defendant's guilt or innocence, prosecutors do have a right to comment on the evidence. *Id*. at (¶47). The supreme court ultimately found that the prosecutor in that case was not offering a personal opinion concerning Robinson's guilt; rather, "the prosecutor was commenting on the sufficiency of the evidence and . . . ask[ing] the jury to find Robinson guilty after considering all the evidence." *Id*. at 1231-32 (¶47).

¶23. Additionally, in *Case v. State*, 187 So. 3d 177, 184 (¶24) (Miss. Ct. App. 2015), this Court found no merit to the defendant's argument that the prosecutor improperly referred to the defendant as a pedophile during closing arguments. The defendant was on trial for two

8

counts of fondling a child, and this Court explained that "the prosecutor's comments, taken in context, show that the prosecutor was commenting on the facts presented in the evidence." *Id*. at (¶26).

¶24.     Similarly, in the case before us, we find that the prosecutor's statements were not improper. The prosecutor was commenting on the sufficiency of the evidence—not offering opinions on Antoine's guilt.

¶25.     Antoine argues that the prosecutor also made statements during closing arguments that were "intended solely to excite the passions or prejudices of the jury, or makes inflammatory and damaging statements of fact not found in the evidence," such that the "trial judge should [have] intervene[d] to prevent unfair argument." *Moffett v. State*, 156 So. 3d 835, 857 (¶61) (Miss. 2014). Antoine specifically claims that the following statement was improper:

> And after shooting they got back in Sonata's car and they drove away. I feel sure they were in there pumped up about what they'd just done, chest poked out, bragging about their guns and how many shots they had fired into that silver Mercedes. It wasn't until a few days later that they find out who was inside that silver Mercedes had been killed was . . . Lonnie. And that's when they panicked. Oh, my gosh. We killed . . . Lonnie.

¶26.     Antoine argues that no evidence was presented at trial to suggest what he or the other men said after the alleged shooting or how he might have felt. Antoine therefore asserts that the prosecutor made this statement to "enrage the jury" and "push them to reach a guilty verdict."

¶27.     However, as the State points out, attorneys are "allowed considerable latitude in the argument of cases." *Fortenberry v. State*, 191 So. 3d 1245, 1251 (¶18) (Miss. Ct. App. 2015). They are "not limited to the facts introduced into evidence, but [they] may argue the

deductions and conclusions that may reasonably be drawn therefrom." *Id*. Additionally, "opening and closing arguments of counsel are not evidence, and reversal is not required when a jury is properly instructed that statements made by counsel are not evidence." *Piccaluga v. State*, 337 So. 3d 1142, 1153 (¶51) (Miss. Ct. App. 2021) (internal quotation marks omitted).

¶28.    In *Sipp v. State*, 936 So. 2d 326, 333 (¶15) (Miss. 2006), the prosecutor made a statement during closing arguments concerning the exact time the defendant returned to a location on the night of the victim's murder.  At trial, the defendant objected, arguing that the exact time was not a fact in evidence.  *Id*.  The trial court overruled the objection.  *Id*. On appeal, the supreme court found that the prosecutor's statement was not impermissible, explaining that

> the prosecutor was simply presenting to the jury his own deductions of [the defendant's] whereabouts based on witness testimony.  As a finder of fact, the jury was free to accept or disregard the prosecutor's conclusions concerning the whereabouts of [the defendant] and were even encouraged to consider disregarding it by defense counsel's challenge.

*Id*. at (¶16).

¶29.    Although Antoine did not object to the prosecutor's statements in this case, we find that the prosecutor here "was simply presenting to the jury [her] own deductions" of the events that happened after the shooting.  *Id*.  "[T]he jury was free to accept or disregard" these conclusions.  *Id*.  We also find that the prosecutor's statements did not "depart[] entirely from the evidence." *Moffett*, 156 So. 3d at 857 (¶61).  Sonata testified at trial that if Monya ever brought up the shooting, it was in a "boasting type of manner."  Furthermore,

our review of the transcript shows that the trial court instructed the jury that attorney statements are not evidence and that the jury should ignore any argument, statement, or remark not based on the evidence. *See Piccaluga*, 337 So. 3d at 1153 (¶51). "It is presumed that jurors follow the instructions of the court." *Ambrose*, 254 So. 3d at 134 (¶182).

¶30. Finally, we find no merit to Antoine's argument that the prosecutor improperly concluded her closing arguments by telling the jury to "[c]ome back [from deliberations] with justice for Lonnie Taylor." In *Lomas v. State*, 328 So. 3d 670, 685 (¶¶36-37) (Miss. Ct. App. 2021), this Court found that the prosecutor's statement to the jury to "[g]ive the family some justice; give [the victim] some justice" was not an improper argument that "encourages juries to use their verdict to send-a-message to the public or to other potential criminals, instead of rendering a verdict based solely on the evidence introduced at the trial of that case." This Court explained that

> the State thoroughly argued the evidence against [the defendant] and urged the jury to find him guilty on that evidence. The State did not argue that justice for [the victim] was necessary to deter such future crimes in the community, but rather it argued the evidence and logical inferences that could be made from it.

*Id*. at (¶37).

¶31. After reviewing the transcript in the case before us, we find the same to be true here. We therefore find that the prosecutor's comment regarding "justice for Lonnie" was not improper "send a message" argument.

## CONCLUSION

¶32. After our review, we find that the prosecutor did not make any statements or

arguments during closing arguments that were "so inflammatory that the trial court should have intervened on its own." *Ambrose*, 254 So. 3d at 130 (¶167). We therefore find no reversible error, and we affirm Antoine's conviction and sentence.

¶33. **AFFIRMED.**

**BARNES, C.J., WILSON, P.J., GREENLEE, WESTBROOKS, McDONALD, LAWRENCE, McCARTY, SMITH AND EMFINGER, JJ., CONCUR.**